Gail DILIBERO et al.

v.

Norma Ann SWENSON et al.

No. 90–233–Appeal.

Supreme Court of Rhode Island.

June 10, 1991.

Charles Garganese, Jr., Rice, Dolan & Kershaw, Providence, for plaintiffs.

John M. Roney, Roney & Labinger, Providence, for defendants.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the defendants' appeal from a decision of the Superior Court granting the plaintiffs' motion for a preliminary injunction. We reverse.

The facts of the matter before the court are integrally related to prior litigation between virtually identical parties. Thus it is essential that we set out a fairly complete narration of the facts in order to create a historical perspective so that our resolution of the issue now before the court will be fully understood.

In 1983 Norma DiLibero (Norma) and her husband, Joseph DiLibero (Joseph), and their daughter, Norma Ann Swenson (Norma Ann), opened an optical business on Mineral Spring Avenue in North Providence, Rhode Island, known as Optical Care. Norma, Joseph, Norma Ann, and Optical Care are defendants in the present matter.

In 1984 Steven DiLibero (Steven), a nephew of Norma and Joseph's was hired by Optical Care as an optician. Steven and his wife, Gail DiLibero (Gail), are plaintiffs in the present matter. Thereafter, sometime during 1986, Steven entered into an oral agreement with Norma and Joseph whereby Steven purchased an ownership interest in Optical Care for the sum of $8,000.[1]

---

**1.** This fact is in dispute as Gail now claims that the $8,000 invested in Optical Care belonged to both Steven and her.

Steven was also named president of Optical Care pursuant to the oral agreement.

In 1989 a business dispute arose between Steven and Norma and Joseph concerning the percentage of Optical Care stock to which Steven was entitled and other business-related matters. That dispute resulted in a court action filed by Steven against Norma, Joseph, and Optical Care. We shall refer to this first lawsuit as *DiLibero I* for purposes of clarity.

In his complaint in *DiLibero I* Steven made several allegations concerning Norma and Joseph's intent to deprive Steven of his benefits of ownership and of a just return on his investment. It is significant to note that in establishing the factual predicate for his allegations, Steven stated in his complaint that "[p]laintiff [Steven] and the individual defendants [Norma and Joseph] together own *all* of the outstanding stock in the defendant corporation." (Emphasis added.)

*DiLibero I* concluded with the agreement of Steven and Norma and Joseph to a negotiated settlement prior to trial. In accordance with a general release, Steven was paid $45,000 for his ownership interest in Optical Care. In return he resigned from the business and released Optical Care, Norma, Joseph, their family members, several named corporations, and "all other persons, firms and corporations" from the claims raised in *DiLibero I*. It is significant to note that Steven's wife, Gail, was present during the negotiations that resulted in the settlement.

Unfortunately the settlement in *DiLibero I* did not end the family dispute. On September 18, 1989, Norma, Joseph, and Optical Care filed a civil action against Steven and Gail, alleging that they removed Optical Care records and property and were unlawfully soliciting its customers. This case, to which we shall refer as *DiLibero II*, is awaiting trial before the Superior Court.

On October 13, 1989, after answering *DiLibero II*, Gail and Steven filed the present action against Optical Care, Norma, Joseph, their eight children and two family corporations (Atlantis Eyewear, Inc., and JAD & D, Ltd.). We shall refer to the present matter as *DiLibero III*. The allegations made by Gail in the complaint in *DiLibero III* arise from the same transactions that were the subject matter of *DiLibero I*. It is significant that these allegations are now made by Gail in *DiLibero III* whereas they were previously made by Steven in *DiLibero I*. Similarly, Steven's allegations in *DiLibero III* also draw their essence from the same transactions that were the subject matter of *DiLibero I*, except this time his allegations are made against Atlantis Eyewear, a corporation owned by Norma and Joseph that was not expressly named as a defendant in *DiLibero I*.

The defendant's answer in *DiLibero III* denied the allegations in the complaint and asserted as their primary affirmative defenses the doctrines of unclean hands, laches, and estoppel.

Thereafter Gail and Steven moved for a preliminary injunction to prevent defendants from destroying, removing, and/or transferring any corporate assets held by defendant entities for less than adequate consideration. The trial court decided the motion for preliminary injunction on the basis of affidavits and memoranda. Gail's affidavit claimed that she, along with Steven, had been involved in the discussions resulting in the creation of Optical Care. Moreover, Gail claimed, the $8,000 investment that Steven had earlier claimed came only from him was in reality an investment of money belonging to both of them. In support of this claim she produced four checks in the total amount of $5,400 that were drawn on their joint account. She also relied upon Steven's affidavit, which essentially stated that although he had intended to add his wife as a plaintiff in *DiLibero I* since the $8,000 had been a joint investment, he never in fact did so because the case was settled shortly thereafter.

The defendants filed several affidavits in opposition to the motion for a preliminary injunction. In short, defendants claimed that there was never any mention of Gail's entering into the ownership of Optical Care along with Steven. Moreover, they empha-

sized that the settlement that resulted from *DiLibero I* was made in reliance upon their unchallenged understanding that only Steven claimed an ownership interest in Optical Care. This understanding was confirmed by the affidavits of their two attorneys who were involved in the settlement negotiations.

The trial court granted the preliminary injunction requested by Gail and Steven. The trial court correctly stated that plaintiffs must satisfy four criteria in order to obtain the preliminary injunction. First, plaintiffs must show they will suffer irreparable injury if the injunction is not granted; second, plaintiffs must demonstrate that such injury outweighs any harm that granting injunctive relief would inflict on defendants; third, plaintiffs must establish a likelihood of success on the merits; and fourth, the public interest must not be adversely affected by the granting of the injunction. In finding that these criteria were met, the trial court stated that the "[e]vidence submitted to this court by [Gail] supports at least a prima facie case that [Gail] possessed an ownership interest in Optical Care Ltd." Moreover, the trial court found that Gail established a reasonable probability of ultimate success on the merits, stating that "the evidence submitted by the plaintiff is sufficient to establish a prima facie case on this issue as well."

The defendants appealed the granting of the preliminary injunction to this court. They raise two issues on appeal: first, they argue that the trial court applied an erroneous prima facie standard in granting the preliminary injunction, and second, they contend that the trial court abused its discretion in granting the preliminary injunction because plaintiffs failed to demonstrate a reasonable likelihood of ultimate success on the merits.

■ The only true issue to be addressed in the present matter is whether the trial court erred in granting the preliminary injunction. The rule is well settled that the granting of a preliminary injunction is left to the sound discretion of the trial court. *Paramount Office Supply Co.*

*v. D.A. MacIsaac, Inc.*, 524 A.2d 1099, 1101 (R.I.1987). Therefore, our scope of review is limited to whether the trial court abused its discretion. *Griggs and Browne Co. v. Healy*, 453 A.2d 761, 762 (R.I.1982). Moreover, we have ruled that the granting of a preliminary injunction is not abuse when a plaintiff has made out a prima facie case. *J.B. Prata, Ltd. v. Bichay*, 468 A.2d 266, 267 (R.I.1983). Prima facie evidence is the amount of evidence that, if unrebutted, satisfies the burden of proof on a particular issue. *Paramount Office Supply Co.*, 524 A.2d at 1101.

■ In applying this standard to the facts of the present matter, we believe the trial court abused its discretion in finding that plaintiffs established a prima facie case that there was a reasonable likelihood of ultimate success on the merits. In regard to Gail, the evidence before the trial court demonstrated that she was present during the settlement negotiations between Steven and Norma and Joseph. Gail was aware that Norma and Joseph were negotiating with Steven under the belief set forth in the complaint in *DiLibero I* that it was Steven's $8,000 that was invested in Optical Care. We believe that in these circumstances Gail was under a duty to Norma, Joseph, and all the other defendants in *DiLibero I* to reveal during the settlement negotiations what she now claims to be her joint-ownership interest with Steven in Optical Care. Gail's silence in the face of this duty misled Norma, Joseph, and the other defendants into resolving their dispute with Steven in *DiLibero I* with a settlement of $45,000, which they believed terminated the matter. Because Gail remained silent when she had a duty to speak, and this silence reasonably misled Norma and Joseph into settling with Steven to their detriment, we feel that the doctrine of estoppel applies to prevent Gail from now claiming that she was a joint investor with Steven. *Loiselle v. City of East Providence*, 116 R.I. 585, 359 A.2d 345 (1976). Relying upon this finding, we rule that Gail has failed to demonstrate a prima facie case on the reasonable likelihood of success on the merits.

As far as Steven is concerned, we believe that the general release he entered into in consideration of the $45,000 as part of the settlement agreement prohibits him from now bringing suit against Atlantis Eyewear. Steven agreed, in part, to

> "release and discharge said Norma Di-Libero, Joseph DiLibero, * * * and all other persons, firms and corporations of and from any and all causes of action, claims, demands of whatever kind and nature arising out of or in the future to arise out of or relate to in whole or in part of any act, transaction, practice, conduct, omission, matter, cause effect or thing related to, alleged or asserted in Civil Action No. 89–2700 pending in Providence County Superior Court entitled *STEVEN DILIBERO vs. JOSEPH DI-LIBERO, NORMA DILIBERO AND OPTICAL CARE, LTD.* or any other matter arising out of or connected with any business transaction or relationship referred to in the aforesaid civil action, and for which I have claimed RELEASEES to be legally liable which liability is expressly denied, it being my intention to discharge fully and finally said RELEASEES and all other persons, firms and corporations who are or may be liable to me for any losses and damages and to dismiss with prejudice the aforesaid action which I have pending in the Providence County Superior Court—Civil Action No. 89–2700."

Atlantis Eyewear is covered by the language of this general release in that the allegations Steven now brings against Atlantis Eyewear draw their essence from transactions that were the subject matter of *DiLibero I.*

*DiLibero III* is an illusory action. The fact that Atlantis Eyewear was not expressly named as a releasee is insufficient to mitigate the effect of the broadly worded general release that was clearly intended to terminate the entire dispute between the parties. In view of this fact we find that Steven has also failed to demonstrate a prima facie case on the reasonable likelihood of success on the merits.

For these reasons the defendants' appeal is sustained, the order of the Superior Court granting the preliminary injunction is reversed, and the papers of the case are remanded to the Superior Court.