IGGY'S DOUGHBOYS, INC. et al.

v.

Gina GIROUX et al.

No. 98–420–Appeal.

Supreme Court of Rhode Island.

May 25, 1999.

---

John J. DeSimone, for Plaintiffs.

Douglas R. DeSimone, Providence, for Defendants.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

1. Iggy's then assigned this lease to plaintiff S.G. Associates, Inc. in 1998. Members of the Gravino family (the Gravinos) own both

## OPINION

PER CURIAM.

This case concerns the interpretation and scope of a commercial-lease provision specifying that "[n]o take-out window service shall be permitted" at an Oakland Beach restaurant located on the leased premises. The lessee-defendant, Mako's Beach, Inc. (Mako's), appeals from a Superior Court order granting a preliminary injunction enjoining the use of any take-out service at the Rocky Point Chowder House (RPCH) located on the leased premises. Mako's contends that the lease provision in question only prohibits take-out-*window* service and does not extend to take-out business in general, provided that the restaurant does not utilize a take-out window to deliver this service. Following a prebriefing conference, we ordered the parties to show cause why we should not decide this appeal summarily. No such cause having been shown, we proceed to do so at this time.

### Facts and Travel

The plaintiff, Iggy's Doughboys, Inc. (Iggy's), has operated a take-out restaurant located at 889 Oakland Beach Avenue in Warwick since 1989. Thereafter, in 1992, Makos leased the premises next door to Iggy's at 885 Oakland Beach Avenue from defendants Gina Giroux and Judith Floodman (landlords), who were also Iggy's landlords. Mako's lease states that "[n]o take-out window service shall be permitted" on the premises. In 1997, after a representative of the landlords assured Iggy's owners that the landlords would not permit a take-out service on the adjacent premises leased by Mako's, Iggy's entered into a twenty-four-year-and-nine-month lease[1] with the landlords. The 1997 lease between Iggy's and the landlords specifies that the "Lessor agrees that, in the event its lease with Mako's Beach, Inc. is terminated prior to February 28, 2004, Lessor

Iggy's and S.G. Associates, Inc. The Gravinos hold an option to purchase both of these Oakland Beach Avenue properties in 2004.

will require any new lessee of the Lessor's restaurant at 885 Oakland Beach Avenue to agree that 'no takeout window service or drive thru service will be permitted.' In the event the Lessor operates said restaurant prior to February 28, 2004 Lessor shall not operate any 'takeout window or drive thru service.'"

In December 1997 or January 1998, Mako's allowed a sub-lessee, defendant RPCH, Inc., to operate RPCH on the leased premises. Pursuant to this arrangement, RPCH, Inc. made extensive renovations to the RPCH restaurant and caused the installation of two garage doors, together with an interior window accessible through the garage-doors area. RPCH, Inc. intended to service take-out orders from this window and from a counter inside the restaurant. However, prior to the 1998 Memorial Day opening of RPCH, Iggy's and the other plaintiff, S.G. Associates, Inc., commenced this Superior Court action and obtained a temporary restraining order preventing defendants from permitting take-out food orders from the restaurant. Thereafter, a Superior Court justice granted plaintiffs' request for a preliminary injunction. She found that the meaning of the lease term "take-out window service" was clear and unambiguous: "What is prohibited is the essential nature of the take out service. The use of the term, 'window,' the Court finds, is descriptive but not restrictive in the manner that the defendant would have it applied. The plain, reasonable and simple construction is that it is the type of service that is prohibited. To read into this language that the same type of service is permitted just as long as it is handed through, or just as long as the food is handed through an interior window, wall opening, doorway or over a counter would render the prohibition meaningless. The Court finds that a take out food service as contemplated by the defendant is prohibited under the defendant's lease. The Court finds that the plaintiff has an interest as a third party beneficiary in that lease."

The hearing justice further found that plaintiffs would suffer immediate and irreparable harm in the absence of temporary injunctive relief because it would be nearly impossible for them to calculate Iggy's loss of business and future growth opportunities as a consequence of its having to compete with a new take-out-service restaurant operating next door. The hearing justice also found that the equities weighed in favor of issuing the temporary injunctive relief requested by plaintiffs, and that Mako's and RPCH, Inc. were well aware of the lease restriction on take-out-window service before they commenced the renovation work. In issuing the preliminary injunction, however, the court left it to Mako's discretion as to how best to eliminate the proscribed take-out-window service at RPCH with the least disruption of the status quo.[2] Makos appealed from the order granting this preliminary injunction, and thereafter, the hearing justice denied Mako's motion to modify or suspend the preliminary injunction.

Mako's argues on appeal that the hearing justice erred in allowing the admission of parol evidence during the hearing, claiming that such evidence is inadmissible when a lease is unambiguous. Here, the hearing justice specifically found that the lease provision regarding take-out-window service was clear and unambiguous. Therefore, Mako's contends, the hearing justice erred in permitting an owner of Iggy's, David M. Gravino, to testify that the landlords' representative, Southern Giroux, had assured plaintiffs that the landlords would not allow take-out service at the restaurant next door to Iggy's. Mako's further argues that even if the court could have construed the lease provision as ambiguous, the evidence at the hearing indicated that the provision only prohibited *window* take-out orders and not all take-out service. Moreover, Makos av-

2. For example, the hearing justice indicated that she did not intend to prohibit patrons of RPCH from taking away the unconsumed portion of their meals in a "doggie bag."

ers that plaintiffs had filled take-out orders when they previously operated a business on the premises now occupied by RPCH. The plaintiffs counter that the hearing justice did not abuse her discretion in granting the preliminary injunction. The plaintiffs note that the court addressed all the necessary factors in granting the injunction and adopted a reasonable construction of the lease provision at issue.

### Analysis

■ Under G.L.1956 § 9–24–7, the issuance of a preliminary injunction is an appealable order. *See Paramount Office Supply Co. v. D.A. MacIsaac, Inc.,* 524 A.2d 1099, 1101 n. 1 (R.I.1987). However, the decision to grant a preliminary injunction rests within the sound discretion of the hearing justice. *See The Fund For Community Progress v. United Way of Southeastern New England,* 695 A.2d 517, 521 (R.I.1997). We therefore limit our review to a determination of whether the hearing justice abused this discretion. *See id.* Furthermore, we will not find such an abuse if the party requesting the preliminary injunction at least has made out a prima facie case. *See DiLibero v. Swenson,* 593 A.2d 42, 44 (R.I.1991). Under such a limited scope of review, this Court need not reach nor resolve the underlying substantive issues as it would after the imposition of a permanent injunction. *See J.B. Prata, Ltd. v. Bichay,* 468 A.2d 266, 268 n. 2 (R.I.1983). Rather, our role is limited to determining whether the hearing justice considered and resolved each of the appropriate preliminary-injunction factors without abusing her discretion in doing so. Thus, in deciding whether to issue a preliminary injunction, the hearing justice should determine whether the moving party (1) has a reasonable likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown that the issu-

ance of a preliminary injunction will preserve the status quo. *See The Fund For Community Progress,* 695 A.2d at 521. Finally, prospective damage to a business's good will and reputation "is precisely the type of irreparable injury for which an injunction is appropriate." *Id.* at 523.

■ We agree with the hearing justice that plaintiffs established a prima facie case warranting preliminary injunctive relief. Contrary to Makos arguments, it does not appear that the hearing justice relied upon any parol evidence in determining that the lease provision in question prohibited take-out service generally, and not just take-out service transacted through or via a take-out window. The evidence of assurances given by the landlords' agent that they would not permit the restaurant next door to Iggy's to engage in any take-out service was relevant to the hearing justice's task of assessing the relative equities of the parties' positions. In addition, evidence that such assurances led plaintiffs to sign a twenty-four-year lease also was material to the decision whether plaintiffs would suffer irreparable harm if the court denied them preliminary injunctive relief. Thus, the hearing justice properly addressed these and each of the other preliminary-injunction factors before granting such relief.

■ Moreover, the hearing justice did not abuse her discretion in finding that, by its terms, the lease provision in question appeared to prohibit not just service at a take-out window, but also the broader concept of take-out-window service at RPCH. As the hearing justice noted, a contrary interpretation would tend to deprive the clause of its intended effect because, by substituting a door, a counter, an opening, or some other method or device for a take-out-service window, defendants easily could circumvent the prohibited activity, thereby rendering the lease restriction virtually meaningless. In our judgment, the hearing justice also did not abuse her discretion in finding that plaintiffs would have

suffered irreparable harm to their business's good will if the court allowed RPCH to operate a take-out-window service via a walk-through garage with a take-out opening or via some other type of over-the-counter take-out operation. She also did not err in concluding that the potential damages attributable to Iggy's lost potential customers were not easily calculable in the absence of injunctive relief. In addition, the court limited its grant of the injunction to preserve the status quo because RPCH still will be able to continue its non-take-out restaurant business. Doubtless, plaintiffs' request for permanent injunctive relief will require greater scrutiny and attention to whether such a remedy is justified, and if so, to whether the court should permit any reasonable exemptions and modifications to the ban on take-out-window service at RPCH if the scope of such final relief is to be reasonable. Nonetheless, given the circumstances faced by the hearing justice, this preliminary injunction against take-out service did not unduly limit the entrepreneurial rights of either Mako's or RPCH. *See J.B. Prata, Ltd.,* 468 A.2d at 268.

▆▆▆▆ Mako's also asserts that the court should not have allowed plaintiffs to enforce the lease provision in question because they are not its intended third-party beneficiaries. "If the third party is an intended beneficiary [of a covenant], the law implies privity of contract." *Davis v. New England Pest Control Co.,* 576 A.2d 1240, 1242 (R.I.1990); *see also Curato v. Brain,* 715 A.2d 631, 635 (R.I.1998). Mako's argues that no evidence exists in the record to indicate that plaintiffs were the intended beneficiaries of their lease provision barring take-out-window service. However, the evidence presented allowed the hearing justice to infer that the landlords had inserted such a restriction in Mako's lease because of Iggy's preexisting proximity to the RPCH restaurant site. Moreover, the hearing justice also had evidence before her that Iggy's lease specifically referenced the property covered by

Mako's lease with respect to the no-take-out-window-service requirement and that the landlords' agent had assured Iggy's that there would be no take-out service next door at Mako's RPCH site. In any event, by the time Mako's had authorized its sub-lessee, RPCH, Inc., to operate the RPCH restaurant on the premises, it was clear that, as a practical matter, Iggy's was the de facto beneficiary of the lease restriction in question.

▆▆▆▆ Finally, Mako's contends that we must strictly construe restrictive covenants, as restraints on trade, against the beneficiary of the covenant. Because the law disfavors restraints on trade, Mako's argues, the balance of the equities weighed in favor of denying the preliminary injunction. Although restrictive covenants in Rhode Island leases are governed by the same rules as covenants generally, *see Almacs Inc. v. Drogin,* 771 F.Supp. 506, 509 (D.R.I.1991), such covenants are not favored by the law and will be strictly construed, *see id.* at 509–10. We shall enforce a restrictive covenant, however, if it is reasonable in light of the circumstances surrounding the agreement and does not extend beyond what is apparently necessary to protect its beneficiaries. *See Durapin, Inc. v. American Products, Inc.,* 559 A.2d 1051 (R.I.1989) (interpreting a non-competition restrictive covenant). In light of the limited scope of the no-take-out-window-service covenant and the assurances given to Iggy's owners by the landlords representative—assurances which induced Iggy's owners to enter into a twenty-four-year lease—the balance of the equities appears to have weighed in favor of Iggy's. Iggy's own lease indicated that it was the intended beneficiary of this provision only until February 28, 2004, which apparently coincides with the time limit that its owners have to purchase the next-door property leased by Mako's. Under these circumstances, the restrictive covenant was not unreasonable on its face so as to prevent the hearing justice from

enforcing it at the preliminary-injunction stage of this litigation.

For these reasons, we affirm the order granting the preliminary injunction and deny and dismiss the defendants' appeal.