DECISION
Plaintiffs are retired police officers of the City of Woonsocket. Before the Court is their application for Preliminary Injunction to prevent the City from unilaterally depriving them of dental benefits. *Page 2 
The parties agree on the essential material facts for this Preliminary Injunction.[1] Each of the Plaintiffs are retired Woonsocket Police Officers who retired under contracts providing them with certain pension rights, dental benefits and other benefits. They expected these benefits to continue through their retirements. Their benefits are different from present police officers who have entered into new Collective Bargaining Agreements (CBAs) through a different bargaining agent.
The Collective Bargaining Agreement of July 1, 1990 is typical of the agreements which
were in effect when Plaintiffs retired. It reads, in part:
 Section IV Blue Cross and Physicans' Service 4.1 . . .
 4.2 The City shall pay the entire cost of Major Medical, plus student rider coverage, and $2 Co-Pay Drug Program, for all members of the Fraternal Order of Police Lodge #9 on active service in the city employment and including those members placed on disability or retirement pension after July l, l981.
In June 2009, the City Personnel Director mailed the retirees a notice that they would no longer receive dental insurance coverage if they had reached the age of 65. Woonsocket, like most Rhode Island municipalities, has suffered a significant fiscal shortfall in a challenging local economy.
The retirees did not assert and were not given a hearing, nor were they provided with compensation for the lost benefit. Several retirees filed a grievance and a request for arbitration which has never been held. Because the retirees' benefits are distinct from those of active police officers, the retirees assert that their interests are not adequately protected by the present bargaining agent. They claim the new bargaining agent attempted to negotiate their retirement *Page 3 
benefits away, even thought they are already retired. Accordingly, the retirees no longer assent to arbitration.
 THE ARBITRATION OPTION
The City posits that arbitration is favored by the law and the only remedy for relief is that which is set forth in the contract. The retirees claim that their interests stand in stark contrast to that of the union membership, which seeks to protect ongoing interests of present employees. While there is no doubt that arbitration is favored by the law, the United States Supreme Court and the Rhode Island Supreme Court have made exceptions to mandatory arbitration in specific circumstances:
 "In the instant case, defendants suggest that an arbitration panel's authority may extend beyond the determination of pension benefits for current employees to include determination of the rights of former employees who have already retired . . . under the specific facts of this case, it is clear that plaintiffs are not unions nor are they members of or represented by unions. . . . We additionally find persuasive plaintiffs' argument that retirees, at least in situations such as the one now before us, cannot be treated as employees, as supported by the United States Supreme Court's sound reasoning in Allied Chemical Alkali Workers of America, Local Union #l vs. Pittsburgh Plate Glass Company, 404 U.S. 157, 30 L.Ld 2d 341, 92 S.Ct. 383 (l971). Arena vs. City of Providence, 9l9 A.2d 379, 389-390 (R.I. 2007).
The Rhode Island Supreme Court noted that in AlliedChemical, the term "employees does not include retirees for the purposes of the National Labor Relations Act (ACT) for a number of reasons." Arena vs. City of Providence, 9l9 A.2d 379, 388-389 (R.I. 2007). Accordingly, the retirees are not foreclosed from seeking injunctive relief, when arbitration will not afford relief from the ongoing harm. *Page 4 
 THE PRELIMINARY INJUNCTION STANDARD
The Supreme Court has clearly set forth the elements that the court must consider when deciding a request for a Preliminary Injunction:
 "[I]n deciding whether to issue a preliminary injunction, the hearing justice should determine whether the moving party (l) has a reasonable liklehood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tipped in its favor, (4) has shown that the issuance of a preliminary injunction will preserve the status quo." Foster Glocester Regional School Building Committee vs. Sette, 2010 W.L. 2224024, 3, ___ ___ A.2 ___, (R.I. 2010) (quoting Iggy's Doughboys, Inc. v. Giroux, 729 A.2d 701, 705 (R.I. l999).
 VESTING
The parties agreed, in writing, that the police officers would receive continued benefits after they retire. The City does not question, for purposes of this Preliminary Injunction motion, that the retirees left City service with the benefits and with the expectation that the benefits would continue. These contract rights became vested upon their retirement. See distinction between contract rights and statutorily vested rights in NationalPassenger Railroad Corporation vs. Atchison, Topeka Sante FeRailway Company, 470 U.S. 451, 465-66, 84 L.Ed. 2d 432, 105 S.Ct. l441 (l985).
The City's unilateral withdrawal of vested contract rights without compensation is highly suspect. First, the City appears to have reached its expressed contract obligation or, as the retirees put it, "a promise is a promise." (Plaintiffs' Supplemental Memorandum of May l5, 2010 at p. 21.) Second, the retirees' vested rights may not be deprived without compensation. Board of Regents vs.Roth, 408 U.S. 563, 33 L.Ed. 2d 548, 92 S.Ct. 270l (l972). *Page 5 
 APPLICATION OF THE INJUNCTION STANDARD
In Arena, the city modified cost of living benefits to retired police and fire officers. the high court recited the standard for determining whether the benefits had vested, concluding "Therefore, in Rhode Island, pension benefits vest once an employee honorably and faithfully meets the applicable pension statutes requirements." Arena, at 393.
While Arena went on to consider whether the benefit was merely a voluntary gratuity, such a claim is not even presented here where the express contracts display these benefits as the result of collective bargaining. Hence, this Court concludes that the retirees have demonstrated a strong likelihood of success on the issue that the retirements were vested upon retirement. Of course, maintaining the dental insurance and other retirees' benefits would ensure maintenance of the status quo. As language concerning the continuation of the benefits is contained in the contracts, and the benefits are now vested rights of the retirees, a balancing of the equities favors a continuation of these benefits, pending trial. It is in the public interest to continue to provide explicit, vested contract rights — to hold persons to their bargain.
Although each of these three factors clearly favor the granting of an injunction, whether the retirees will suffer irreparable harm is not as clear. The retirees have attached exhibits indicating the importance of dental care and allege the retirees will be unable to afford treatment without insurance. While the City argues that money damages may suffice, the Court considers the factor to be evenly balanced between the two parties. However, the most significant factor is the likelihood of success on the merits, or as Judge Selya put it "The sine qua non of this four-part inquiry is likelihood of success on the merits . . ." New Comm Wireless Services,Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (C.A. 1, 2002) citingWeaver v. Henderson, 984 F.2d 11, 12, (C.A. 1, 1993). *Page 6 
 CONCLUSION
The retirees' motion for issuance of preliminary injunction is granted. The City shall continue to provide dental insurance for the retirees until the time of trial.
[1] The parties reserve their right to present other evidence and contest the facts at the permanent injunction trial.