**Supreme Court**

No. 2011-26-Appeal.
(PC 09-3131)

Gilberto Vasquez                    :

v.                    :

Sportsman's Inn, Inc. et al.            :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2011-26-Appeal.
(PC 09-3131)
(dissent begins on page 13)

Gilberto Vasquez                           :

v.                                         :

Sportsman's Inn, Inc. et al.               :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.** Before this Court is an appeal by the defendants, Sportsman's Inn, Inc., DLM, Inc., and DLM Realty, LLC, from an order that granted the motion of the plaintiff, Gilberto Vasquez, for a preliminary injunction enjoining the defendants from encumbering, alienating, or conveying property located at 122 Fountain Street in Providence. This case came before the Supreme Court for oral argument on September 19, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the parties' arguments and after considering the memoranda submitted by counsel, we are satisfied that cause has not been shown, and we shall proceed to decide the appeal at this time without further briefing or argument. For the reasons set forth in this opinion, we vacate the order of the Superior Court granting the plaintiff's motion for a preliminary injunction.

# I
## Facts and Travel

On November 11, 2006, at 10 or 11 p.m., plaintiff arrived at Sportsman's Inn, Inc. (Sportsman's Inn) in Providence. That establishment features hotel and lounge services, and it leases the premises at 122 Fountain Street from DLM, Inc. It is noteworthy that before he arrived at Sportman's Inn that evening, plaintiff had ingested ecstasy.[1] While socializing during the night, plaintiff said he drank about five alcoholic beverages, including both mixed drinks and beer. The plaintiff left Sportman's Inn at around 2 a.m., and said that the next thing he remembers was hearing a gunshot, falling to the ground, and waking up in a hospital.

On or about June 2, 2009, plaintiff filed a civil action against Sportsman's Inn and DLM, Inc. In his complaint, he alleged that he was shot as a result of the failure of both defendants to provide adequate security at the business.[2]

On December 22, 2009, plaintiff learned that the property at 122 Fountain Street was for sale. He moved with alacrity for a temporary restraining order on the next day. A justice of the Superior Court granted his request and assigned the matter for a hearing on a preliminary injunction. At that hearing, which took place on January 8, 2010, Sgt. Raymond Hull of the Providence Police Department, testifying under subpoena as a keeper of records, documented the number of police service calls to the Sportsman's Inn and its immediate vicinity. The records

---

[1] Methylenedioxymethamphetamine, also known as MDMA or "ecstasy," "is a synthetic, psychoactive drug that is chemically similar to the stimulant methamphetamine and the hallucinogen mescaline. MDMA produces feelings of increased energy, euphoria, emotional warmth, and distortions in time, perception, and tactile experiences." National Institutes of Health, National Institute on Drug Abuse, http://www.drugabuse.gov/publications/drugfacts/mdma-ecstasy (last visited Dec. 12, 2012).

[2] In March 2010, plaintiff amended his complaint to add DLM Realty, LLC as a defendant among other entities not relevant to this appeal. DLM Realty owned all the stock of DLM, Inc.

dated from January 1, 1996 to the time of the hearing.  In his testimony, Sgt. Hull estimated that the total number of service calls to that location was about 800.[3]

David Deluca, president of Sportsman's Inn, Inc. also testified at the hearing for preliminary injunction.  He explained that Sportsman's Inn, Inc. and DLM, Inc. shared the same building, office, phone number, office supplies, and insurance policy.  He testified that both entities were engaged in the same business of hotel/lounge and services, and that the companies also had common officers.  Michael A. Deluca and his nephew, David Deluca, oversaw all the daily operations of both corporations.  David Deluca also testified that he did not "know of any corporate formalities that have been followed," and that since 1995, neither Sportsman's Inn nor DLM, Inc. had conducted any annual meetings of the board of directors or shareholders, and no minutes had been kept.  He also explained that whatever business needs DLM, Inc. and DLM Realty had were met by the efforts of Sportsman's Inn's employees, because neither DLM, Inc. nor DLM Realty had any employees.

Deluca also was examined about corporate assets.  He testified that DLM, Inc. had about $30,000 in capital; DLM Realty, LLC (DLM Realty), which was merely a holding company that owned all the stock of DLM, Inc., had no other assets; and Sportsman's Inn lacked substantial capital, but he added that it did own bar equipment and two motor vehicles, a Land Rover and a Honda.  He said that he was not sure whether Sportsman's Inn paid rent to DLM, Inc.  David Deluca also testified that if a substantial judgment were to be rendered against Sportsman's Inn, it would likely declare bankruptcy.

---

[3] The record revealed that there actually were 667 calls between January 1, 1996, and approximately 2 a.m. on November 12, 2006, when Vasquez was wounded.  This impressive number includes, but is not limited to, seventy-three public disturbances, fourteen assaults, twenty aggravated assaults, five robberies, one shot fired, three sexual assaults, twenty threats, twenty-two larcenies, one abduction/kidnapping, four breaking and enterings, and four indecent exposures.

David Deluca further testified that Sportsman's Inn no longer had a parking area of its own. He also explained that, while there were no bouncers[4] or security personnel outside the establishment, three bouncers generally were on duty inside: one at the Fountain Street entrance, one at the Martha Street entrance, and one in the back room. However, on the night of the incident described in the complaint, just one manager and only one bouncer were on duty. He said a metal detecting wand was used to prevent people from bringing dangerous objects into Sportsman's Inn.

At a later hearing, Gene Carlino, an attorney, testified about the formation of the corporations. He said that on December 20, 2001, DLM Realty was established, and the two shareholders of DLM, Inc., Michael A. Deluca and Michael Deluca, transferred their stock interests to DLM Realty, thereby creating a parent-subsidiary relationship between DLM Realty and DLM, Inc. Attorney Carlino explained that DLM Realty was established to take advantage of certain tax benefits.

Finally, Jane Lattinville, a certified public accountant, offered testimony. She explained that it was she who prepared the corporate tax return for all three entities: Sportsman's Inn, DLM, Inc., and DLM Realty. She testified that in 2006, Sportman's Inn's taxable income was $25,427, after expenses. Those expenses included a rent payment of $247,000 to DLM, Inc.[5] Lattinville also clarified that DLM, Inc. had failed to file its annual report for a few years because of oversight, resulting in the revocation of the corporate charter in 2008. Lattinville said that she then completed the necessary procedure and the charter was reinstated.

---

[4] The American Heritage Dictionary of the English Language defines the term "bouncer" as meaning "[a] person employed to expel disorderly persons from a public place, especially a bar." The American Heritage Dictionary of the English Language 217 (5th ed. 2011).

[5] According to the witness, DLM, Inc.'s tax returns provided "no activity" because the tax returns were reported under DLM Realty.

- 4 -

On May 19, 2010, the Superior Court issued an "Order (Regarding Motion to Attach and Corporate Identities)," in which the trial justice found that the overall finances of DLM, Inc. and Sportsman's Inn were closely intertwined.[6] The trial justice reasoned that: both corporations shared the same building, offices, owners, and officers; DLM, Inc. and Sportsman's Inn did not keep minutes nor did they hold elections in accordance with the bylaws; DLM, Inc.'s charter had been revoked on October 20, 2008; and David Deluca, the chief operating officer, was unaware of whether Sportsman's Inn paid rent or filed tax returns. The trial justice determined that the businesses were sufficiently capitalized, but he expressed a concern that DLM, Inc.'s only income was Sportsman's Inn's rent payments. Finally, the trial justice concluded that even though he could not specifically find that one corporation dominated the affairs of the other, he nonetheless inferred that the same principals dominated the finances, policies, and practices of each entity. Based on these findings, the trial justice concluded that "Vasquez has demonstrated a likelihood of success on the merits that the corporate formalities will be disregarded."[7]

The trial justice also issued an "Order (Regarding Motion to Attach in a Tort Action)" on July 15, 2010, in which he denied Vasquez's motion to attach the assets of the corporations. The trial justice reasoned that the prejudgment attachment of property is not authorized in tort

---

[6] The parties agree that a motion to attach the real estate was not an issue before the trial justice. However, when the trial justice made the determination that the corporate entities would be disregarded for the purposes of Vasquez's pending motion for the issuance of a preliminary injunction, he directed the parties to address whether attachment was an appropriate remedy.

[7] This is otherwise known as piercing the corporate veil. See National Hotel Associates v. O. Ahlborg & Sons, Inc., 827 A.2d 646, 652 (R.I. 2003) (when an individual or corporation so controls another corporation as to make it a mere conduit or instrumentality, the piercing of the corporate veil doctrine permits creditors of that corporation to reach the assets of the individual or corporation that controls it); Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999).

actions.[8]  As a result, he rescheduled a hearing on Vasquez's motion for a preliminary injunction to allow the parties to further brief the issue.

On July 29, 2010, the trial justice held a hearing on plaintiff's motion for a preliminary injunction.  Derek V. Campbell, a rescue technician for the Providence Fire Department, testified during that hearing.  It was Campbell who had drafted the "Run Report" that summarized the response to the emergency call on November 12, 2006.  The Run Report indicated that a male was "found on ground outside of club"; Campbell explained that it was his recollection that Vasquez was "outside of the doors in close proximity to the club."  He cautioned, however, that he could not remember specific details of the incident, nor could he recall exactly where the injured plaintiff was found.

The court next heard from plaintiff himself.  He testified that he "remember[ed] hearing [a] gunshot and falling down to the floor," but he said he had no specific memory of who shot him.  He explained that he consumed ecstasy before entering the club and "probably [had] about five" beers and mixed drinks when he was at Sportsman's Inn.  Significantly, Vasquez was not questioned and did not testify about whether he had been engaged in any arguments or altercations inside Sportsman's Inn on that night.

Finally, John Marques, a Sportsman's Inn manager who worked the night of the incident, testified.  He explained that there was no security posted outside the building, but if a patron became loud and disorderly inside the club, the practice was to "[g]o up to the gentleman, see what the problem [was], obviously try to put it under control * * * [and] [i]f you can't[,] you ask

---

[8] We note that prejudgment attachment may, in certain circumstances, be available in tort actions, although "the remedy of attachment shall not be generally available under the provisions of [G.L. 1956] § 10-5-2 when the cause of action is one sounding in tort." Martin v. Lincoln Bar, Inc., 622 A.2d 464, 466 (R.I. 1993) (quoting United States v. J. Tirocchi & Sons, Inc., 180 F. Supp. 645, 650 (D.R.I. 1960)).

them to leave. If you can't ask them to leave, you call the police." He also said that during the seven years that he was a manager, there were "about five little arguments there, maybe, that [he] remember[ed]."

After the hearing, the trial justice granted plaintiff's motion to enjoin the sale of the property. He concluded that Vasquez had established a likelihood of success that the corporate formalities should be disregarded and that Sportsman's Inn had breached its duty of reasonable care to him. Specifically, the order concluded that the "[d]efendants [were] enjoined and restrained from alienating, conveying[,] or encumbering their real estate on Fountain Street in Providence until further order of this Court." The trial justice attached two conditions to his order: first, defendants could seek Court approval for modification of the order in the event of a change in circumstances, and second, the order would remain in effect only until November 17, 2011. On November 17, 2010, the trial justice's decision was reduced to an order.

On January 22, 2011, defendants timely appealed the decision of the trial justice.[9] In their appeal, defendants maintain that the trial justice abused his discretion in finding that plaintiff had demonstrated that there was a reasonable likelihood of success on the merits of the negligence claim and that the corporate veil should be pierced.

## II
## Standard of Review

Under G.L. 1956 § 9-24-7, an order granting a preliminary injunction may be appealed directly to this Court.[10] "[B]ecause the decision to grant * * * a preliminary injunction 'rests

---

[9] While this appeal has been pending, DLM, Inc. sold the property, after authorization from the trial justice, and deposited approximately 1.4 million dollars in the Superior Court Registry.

[10] General Laws 1956 § 9-24-7 provides, in pertinent part:

> "Whenever, upon a hearing in the [S]uperior [C]ourt, an injunction shall be granted or continued, or a receiver appointed, or a sale of real or personal property ordered, by an interlocutory

- 7 -

within the sound discretion of the hearing justice,' we review that decision under an abuse-of-discretion standard of review." Town of Coventry v. Baird Properties, LLC, 13 A.3d 614, 620 (R.I. 2011) (quoting Iggy's Doughboys, Inc. v. Giroux, 729 A.2d 701, 705 (R.I. 1999)).

Under such a limited scope of review, this Court need not reach nor resolve the underlying substantive issues as it would after the imposition of a permanent injunction. See J.B. Prata, Ltd. v. Bichay, 468 A.2d 266, 268 n.2 (R.I. 1983). Rather, our role is limited to determining whether the hearing justice considered and resolved each of the appropriate preliminary injunction factors without abusing his or her discretion. Id. In Iggy's Doughboys, Inc., 729 A.2d at 705, we set forth those factors that this Court must consider when it reviews a trial court's grant of a preliminary injunction, which include

> "whether the moving party (1) has a reasonable likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown that the issuance of a preliminary injunction will preserve the status quo." Id.

This Court will not find an abuse of discretion if the party requesting the preliminary injunction at least has made out a prima facie case. See DiLibero v. Swenson, 593 A.2d 42, 44 (R.I. 1991).

### III
### Analysis

The defendants contend that the trial justice abused his discretion when he granted a preliminary injunction because there was no evidence to establish a nexus between Sportsman's Inn and the gunshot wound Vasquez suffered. The defendants also maintain that Vasquez failed

---

> order or judgment, or a new trial is ordered or denied after a trial by jury, an appeal may be taken from such order or judgment to the [S]upreme [C]ourt in like manner as from a final judgment, and the appeal shall take precedence in the [S]upreme [C]ourt."

to demonstrate irreparable harm because he seeks money damages, and that that remedy is available to him.

On the other hand, Vasquez argues that the trial justice properly concluded that he had, in fact, established a likelihood of success that Sportsman's Inn breached its duty to provide adequate security, and that he had suffered damages as a result of that breach. Further, Vasquez argues that the trial justice properly exercised his discretion in finding irreparable harm because of the potential for an enormous damages award juxtaposed with Sportsman's Inn's limited assets.[11]

"To prevail on a claim of negligence, 'a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" Ouch v. Khea, 963 A.2d 630, 633 (R.I. 2009) (quoting Selwyn v. Ward, 879 A.2d 882, 886 (R.I. 2005)). As a preliminary matter, we first must determine whether Sportsman's Inn owed Vasquez a duty of care, the existence of which is a question of law. See id. To determine whether a duty exists in a specific case, the Court considers "'the particular facts and circumstances of a given case' * * * taking into consideration 'all relative factors, including the relationship between the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations,' * * * and the 'foreseeability of harm to the plaintiff.'" Id. (quoting Benaski v. Weinberg, 899 A.2d 499, 502 (R.I. 2006) and Selwyn, 879 A.2d at 887).

We previously have held that "a landowner has no duty to protect another from harm caused by the dangerous or illegal acts of a third party," except "when a plaintiff and a defendant

---

[11] We pause to note that the injuries suffered by Vasquez were catastrophic in nature. Also, the record reveals that although defendants were insured, the terms of their insurance policy excluded claims arising from assault and/or battery.

- 9 -

[have] a special relationship [with] each other." Martin v. Marciano, 871 A.2d 911, 915 (R.I. 2005) (citing Luoni v. Berube, 729 N.E.2d 1108, 1111 (Mass. 2000)). "A special relationship, when derived from common law, is predicated on a plaintiff's reasonable expectations and reliance that a defendant will anticipate harmful acts of third persons and that appropriate measures to protect the plaintiff from harm." Id. (quoting Luoni, 729 N.E.2d at 1111). However, "[o]ne such relationship exists between those who provide intoxicants and those whom they serve." Id. (citing 2 Stuart M. Speiser et al., The American Law of Torts, § 9:20 at 1125 (1985) and quoting Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413, 416 (Miss. 1988) ("[T]he keeper of a bar or tavern, though not an insurer of his guests' safety, has a duty to exercise reasonable care to protect them from reasonably foreseeable injury at the hands of other patrons.")).

In this case, the trial justice concluded that a preliminary injunction was appropriate because a landowner has a "duty to use reasonable care to keep the premises in a safe condition[]," and "Vasquez has shown, at this preliminary stage, that he was injured near the door." In our opinion, however, this is not enough to show a likelihood of success on the merits, because there is a lack of evidence that any such duty was breached. We have held that a causational link to a drinking establishment reasonably may be inferred from evidence that the incidents occurred in the proximity of a particular establishment "and had their origins within." A.J.C. Enterprises v. Pastore, 473 A.2d 269, 275 (R.I. 1984) (emphasis added). Here, the trial justice supported his conclusion by finding that "[a]t some point" that night, Vasquez had been in an argument with "another patron of the inn" and he was shot "[w]ithin 50 yards of the front

door." However, the trial justice cited to no evidence in the record to support this finding, and, after a careful review of the record, we discern that there is no evidence to support it.[12]

Accordingly, we hold that the record as it stands does not adequately demonstrate a prima facie showing that Sportsman's Inn breached any duty to Vasquez. The testimony and the evidence before us fall far short of linking the shooting with Vasquez's visit to Sportsman's Inn or with any person who was on the premises during the evening in question. There is no evidence in the record that Sportsman's Inn had any knowledge of, connection to, or control over the conduct of a gunman or that it possibly could have predicted the events of that evening. Similarly, there was no evidence during the hearing that Vasquez engaged in any altercations while he patronized Sportsman's Inn or that the shooter was a patron of Sportsman's Inn that night. Therefore, we hold that the trial justice abused his discretion and clearly was wrong when he found that Vasquez had shown a reasonable likelihood of success on the merits in his claim against defendants.

---

[12] The only potential support for the trial justice's finding that Vasquez was in an argument with another patron of the bar and that it was this same person who shot Vasquez later in the evening is Vasquez's affidavit in support of his motion for temporary restraining order and preliminary injunctive relief, dated December 23, 2005. In that affidavit, plaintiff swore that while he was at Sportsman's Inn, "[He] got into a loud verbal altercation with other unknown guests inside of the club," and "[a]s [he] exited the club, it [was his] understanding that the same men with whom [he] had earlier argued approached [him] directly outside of the club and again began a verbal altercation." It was "[d]uring this second altercation [that] one of the men brandished a handgun and [he] was shot." That document, however, was not submitted into evidence during the hearings. The plaintiff's answers to Sportsman's Inn's interrogatories, dated August 28, 2009, also provide that

> "[He] do[es] not remember the shooting. [He] know[s] that several of [his] friends and [he] went to the Sportsman's Inn and while inside the Sportsman's Inn[,] [he] got into an argument with a black male. [He] know[s] that [he] was shot by a black male while [he and his friends] tried to leave the Sportsman's Inn."

Similarly, this document was not submitted into evidence during the hearings.

- 11 -

At this point, we believe we must turn our attention to the comments of the trial justice about disregarding the corporate formalities between Sportsman's Inn, DLM, Inc., and DLM Realty. We carefully have read the trial justice's decision and have concluded that he did not make a definitive ruling on this issue; he did consider it within his analysis of whether injunctive relief was appropriate, but certainly not to the extent that the law of the case has been established on that issue.[13]

In our opinion, a "piercing of the corporate veil" analysis is unnecessary at this stage of litigation. We have explained that, in considering the criteria for piercing the corporate veil,

> "one overriding factor is omnipresent: 'the corporate entity should be disregarded and treated as an association of persons only when the facts of a particular case render it unjust and inequitable to consider the subject corporate entity a separate entity.' * * * Such facts may be present, for example, 'when the corporate entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime.'" Doe v. Gelineau, 732 A.2d 43, 48-49 (R.I. 1999) (quoting R & B Electric Co. v. Amco Construction Co., 471 A.2d 1351, 1354 (R.I. 1984)).

In Doe, this Court cited with approval several passages from William Meade Fletcher for guidance on whether to pierce the corporate veil. Doe, 732 A.3d at 48-49. Specifically, Fletcher explains that to pierce a corporate veil, "the corporation must first be assumed liable." 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 41.28 at 166 (2006). This is because "[a]n attempt to pierce the corporate veil is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of

---

[13] "Law of the case is a discretionary doctrine that prefers consistent rulings on the same issues when they occur at the same judicial level, not when the issues are propounded to a reviewing court." In re Review of Proposed Town of New Shoreham Project, 25 A.3d 482, 523-24 (R.I. 2011) (citing and quoting Taveira v. Solomon, 528 A.2d 1105, 1107 (R.I. 1987) ("The law of the case doctrine 'states that ordinarily, after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling.'")).

contract." Id. at 166-67; see 18 Am. Jur. 2d Corporations § 47 at 695 (2004) ("The corporate veil may not be pierced absent a showing of improper conduct."). Indeed,

> "[A]n attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather, it is an assertion of facts and circumstances that will persuade the court to impose the corporate obligation on its owners. It is a means of assessing liability for the acts of a corporation against an equity holder in the corporation. It is not itself an action but is merely a procedural means of allowing liability on a substantive claim." Id. at 694-95.

Because we have determined that Vasquez has not established a reasonable likelihood of success on the merits of his underlying negligence claim, it is, in our opinion, premature to discuss the relevance of the doctrine to this case.

### Conclusion

For the reasons set forth in this opinion, we vacate the order of the Superior Court granting a preliminary injunction. The record shall be remanded to the Superior Court.

**Justice Goldberg with whom Justice Indeglia joins, dissenting.** Because we disagree with the majority's approach to the issues in this case and its consequences to the parties, we respectfully dissent. In our opinion, the majority fails to do justice to either side of this controversy.

Sportsman's Inn, Inc., DLM, Inc., and DLM Realty, LLC (collectively, defendants) appealed an order that granted a preliminary injunction enjoining defendants from encumbering, alienating, or conveying the property at 122 Fountain Street. This decision was reached based on the trial justice's discretionary finding that Gilberto Vasquez (plaintiff) had demonstrated a sufficient likelihood of success to subject defendants to liability under traditional negligence principles. In the Superior Court and on appeal to this Court, the parties' primary and central

- 13 -

focus has been whether the corporate veil should be pierced such that recognized corporate protections—which shield a corporation from liability—should be disregarded. Indeed, the briefing and oral argument in this case were devoted almost entirely to the question of whether the various corporate entities should be required to defend and respond in damages. Even so, the majority bypasses these arguments and vacates the preliminary injunction based on its conclusion that the trial justice erred in failing to cite record evidence to support his findings on the underlying negligence claim, and thus abused his discretion in finding that plaintiff had demonstrated a reasonable likelihood of success on the merits of the claim.

In declining to address this principal dispute, the majority has cited and relied on dicta in a prior case of this Court as authority; we take issue with its conclusion. See Doe v. Gelineau, 732 A.2d 43, 48-49 (R.I. 1999). However, based on the majority's failure to address the issue, our concerns about these dicta are immaterial and will wait for another day.

We would affirm the trial justice's order for a preliminary injunction simply to preserve the corporate assets and prevent their encumbrance, alienation, or conveyance until the case is resolved. In our opinion, the interests of justice are not served by the majority's opinion.

For the above reasons, we respectfully dissent.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        Gilberto Vasquez v. Sportsman's Inn, Inc. et al.

**CASE NO:**        No. 2011-26-Appeal.
(PC 09-3131)

**COURT:**        Supreme Court

**DATE OPINION FILED:**  December 19, 2012

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**        Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Jeffrey A. Lanphear

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Michael P. Fontaine, Esq.

For Defendants:  John R. Mahoney, Esq.