NEW ENGLAND STONE, LLC

v.

Donald C. CONTE et al.

No. 2008–46–Appeal.

Supreme Court of Rhode Island.

Jan. 8, 2009.

Justin T. Shay, for Plaintiff.

Robert D. Wieck, Providence, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on October 28, 2008, pursuant to an

order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the parties' memoranda, we are satisfied that cause has not been shown and we shall decide this appeal without further briefing and argument. We affirm the order of the Superior Court granting injunctive relief.

## Facts and Travel

The salient facts in this case are not in dispute. The plaintiff, New England Stone, LLC (NES or plaintiff), is a Delaware corporation, with its principal place of business in Rhode Island, that provides granite products and related services to customers across the United States. The defendant, Donald C. Conte (Conte or defendant), served as general manager when the company previously was owned by his father-in-law. In 2005, NES was sold and its new management promoted Conte to the position of chief operating officer.

Before undertaking his new duties, Conte entered into an employment agreement with NES that specified that he was to report exclusively to the president of NES, Craig Reynolds (Reynolds). The agreement also provided that NES might terminate Conte only for cause, which was defined as, *inter alia*, "Conte's failure to follow any directive of the [p]resident with regard to the conduct of the [c]ompany's business." The agreement further provided that cause "shall be determined by the [c]ompany in good faith." If Conte was terminated for cause, the contract prohibited him from: (1) competing with NES in and around the New England area for two years; (2) soliciting NES customers for two years; and (3) disseminating confidential information for five years. Additionally, Conte would be entitled only to his accrued salary.

Before the events that led to this dispute, NES had obtained a $50,000 judgment for nonpayment against a customer, Stony Creek Quarry Corporation (Stony Creek), which, despite the judgment, continued to do business with NES on a cash-only basis. Reynolds instructed NES employees that until the judgment was satisfied, all future transactions with Stony Creek must be for cash on delivery. After he had learned that Stony Creek was buying materials from NES at 50 percent down with the balance due in thirty days, Reynolds reiterated these directions in an email to several NES employees, including Conte. He also issued a new directive in that email: because Stony Creek owed NES $7,809 in open invoices, Reynolds canceled all orders from Stony Creek. This latter directive subsequently was revoked by Reynolds, but the cash-on-delivery requirement remained in effect.

On Friday, May 18, 2007, Peter Braun (Braun), an employee of Stony Creek, traveled to NES to pay for and pick up a portion of an outstanding order of finished stone tiles. Because the tiles were to be installed by Stony Creek over the weekend, Braun sent a second truck back to NES to pick up the remainder of the order. However, because of some confusion between Braun and his driver, the driver did not have the payment, and it was too late in the day for him to go back to Connecticut and then return to Rhode Island. Sandy Meyer (Meyer), NES's logistics officer, refused to release the rest of Stony Creek's order without payment. Unable to contact Reynolds, Braun called Conte, explained the situation, and assured him that Stony Creek would send NES the check the next Monday. Conte directed Meyer to release the material without payment, but she refused and reminded Conte of Reynolds's instructions. Then, as the hearing justice found, Conte overruled the logistics officer and ordered the plant fore-

man to release the tiles. The foreman complied and Stony Creek paid NES at a later date.

The next week, on May 23, 2007, Reynolds held a meeting with Conte and Lou Turcotte, NES's chief financial officer, to discuss the Stony Creek incident. Reynolds testified that at the outset of that meeting he had not decided whether he would terminate Conte; but he added that when he asked Conte about countering his directive, Conte allegedly became "huffy," [1] and Reynolds fired him.

Shortly after his termination, Conte acquired ownership in AC Stone, LLC (AC Stone), a business entity that competed with NES. In response, NES instituted this action, contending that Conte was in violation of the employment agreement. NES sought a preliminary injunction prohibiting Conte and AC Stone from competing with the company and soliciting its customers for two years. Conte subsequently filed a counterclaim seeking a writ of attachment. He asserted that he was entitled to payment for eleven weeks of accrued vacation time; he also claimed that, because he was not terminated for cause, he was entitled to his salary for the duration of the employment contract.

After two days of hearings, the hearing justice rendered a bench decision in which he found that Conte was terminated for cause in accordance with the employment agreement. The hearing justice noted that good faith, as set forth in the agreement, was limited to a finding that cause for termination existed:

"It is, to the Court, interesting that the issue of termination under the document, as drafted, is not the subject of the good faith. What is the subject of the good faith is the existence of a cause, and it is inescapable to this Court that cause in fact existed because of the blatant disregard of the literal language of the memo precluding what actually subsequently transpired."

The hearing justice entered an order granting plaintiff's preliminary injunction and denying defendant's request for a writ of attachment. The defendant appealed and asked this Court to expedite the appeal and continue the temporary stay issued by the hearing justice. We granted both requests.

### Standard of Review

We note that this is an appeal from the issuance of a preliminary injunction.[2] When reviewing a hearing justice's decision to grant a preliminary injunction, this Court applies an abuse of discretion standard of review. *Iggy's Doughboys, Inc. v. Giroux,* 729 A.2d 701, 705 (R.I. 1999). In this case, however, defendant does not challenge the sufficiency of the hearing justice's analysis with respect to the injunction; rather, defendant contends that the hearing justice made an error of law by not utilizing the good-faith standard that he proffers. Because this is a question of law, we undertake *de novo* review. *Providence Teachers' Union Local 958, AFL–CIO, AFT v. City Council of Providence,* 888 A.2d 948, 952 (R.I.2005) (citing *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I.2001)).

### Analysis

The defendant does not dispute any of the factual findings that the hear-

---

1. Reynolds defined "huffy" as being a display of negative body language, attitude, and lack of civil communication.

2. Although a preliminary injunction is an interlocutory order, a direct appeal to this Court is permissible in accordance with G.L. 1956 § 9–24–7. *Iggy's Doughboys, Inc. v. Giroux,* 729 A.2d 701, 705 (R.I.1999).

ing justice made. Instead, his sole contention concerns the provision in the employment agreement stating that cause for termination "shall be determined by the [c]ompany in good faith." According to defendant, when an employer may fire an employee only for cause, the employer must have "a good-faith belief, supported by substantial evidence, that the employee engaged in prohibited conduct." *Almada v. Allstate Insurance Co.*, 153 F.Supp.2d 1108, 1114 (D.Ariz.2000) (citing *Cotran v. Rollins Hudig Hall International, Inc.*, 17 Cal.4th 93, 69 Cal.Rptr.2d 900, 948 P.2d 412, 421–22 (1998)).

The defendant urges us to adopt an objective good-faith standard that is used in other jurisdictions in wrongful termination suits. Specifically, as delineated by the Supreme Court of California, termination for cause (or "good cause") must be based on "fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual." *Cotran*, 69 Cal.Rptr.2d 900, 948 P.2d at 422. This standard requires that the employer's decision be "supported by substantial evidence gathered through an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond." *Id.*

The defendant argues that under his proposed standard, NES breached the employment agreement by failing to terminate him in good faith. We observe, however, that Conte's argument seems to go farther than the objective good-faith determination that he proposes. According to defendant, NES was required to conduct a full and thorough investigation, interview key witnesses, notify him of the alleged misconduct, and afford him an opportunity to be heard. Moreover, in conjunction with the insufficient investigation that he alleges occurred here, Conte avers that Reynolds terminated him solely on the basis of his alleged negative attitude during the meeting.

■ This Court previously has declared that Rhode Island is an employment at-will state and that in the absence of an employment agreement, an employee has no right to continued employment and is "subject to discharge at any time for any permissible reason or for no reason at all." *Galloway v. Roger Williams University*, 777 A.2d 148, 150 (R.I.2001) (quoting *DelSignore v. Providence Journal Co.*, 691 A.2d 1050, 1051 n. 5 (R.I.1997)). In situations such as this in which the employee has the benefit of a contractual agreement, Conte asks this Court to create additional and implied terms to govern the relationship as a matter of law. We decline to impose the type of due-process mandates urged by defendant in this case.[3] *See Pacheo v. Raytheon Co.*, 623 A.2d 464, 465 (R.I.1993) ("It is not the role of the courts to create rights for persons whom the Legislature has not chosen to protect."). Nor are we convinced that the type of proceeding for which defendant advocates would afford him any relief. The employment agreement in this case clearly and unambiguously provided that Conte's failure to follow a direct order of the company's president

---

**3.** Of the cases that have adopted the objective good-faith standard, several involved the issue of what the trier of fact was to decide—namely, if the trier of fact was to decide whether the employee in fact committed the act justifying dismissal, or if the trier of fact was to determine whether the employer honestly concluded that the employee committed the dischargeable act. *Cotran v. Rollins Hudig Hall International, Inc.*, 17 Cal.4th 93, 69 Cal.Rptr.2d 900, 948 P.2d 412, 421–22 (1998); *Thompson v. Associated Potato Growers, Inc.*, 610 N.W.2d 53, 57–59 (N.D.2000); *Baldwin v. Sisters of Providence in Washington, Inc.*, 112 Wash.2d 127, 769 P.2d 298, 303–04 (1989).

would constitute cause for termination. *See Rivera v. Gagnon,* 847 A.2d 280, 284 (R.I.2004) ("If the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written.") (citing *W.P. Associates v. Forcier, Inc.,* 637 A.2d 353, 356 (R.I.1994)). Conte does not dispute the hearing justice's finding that he violated the president's order, which supplied the requisite cause for termination. We agree with the hearing justice that, in accordance with the express language of the contract, NES was required to establish in good faith that cause for termination existed. In our view, Conte's admission to Reynolds that he permitted a representative from Stony Creek to pick up materials without paying for them, in direct defiance of Reynolds's order, satisfied the good-faith provision of the employment agreement.

## Conclusion

For the reasons set forth in this opinion, we are satisfied that the hearing justice did not commit an error of law. Accordingly, we affirm the order granting the preliminary injunction. The record may be remanded to the Superior Court.