**Supreme Court**

No. 2014-12-Appeal.
(PC 13-1458)

Mario Gianfrancesco          :

v.                           :

A.R. Bilodeau, Inc. et al.   :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Mario Gianfrancesco          :

v.          :

A.R. Bilodeau, Inc. et al.          :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  The defendants, A.R. Bilodeau, Inc. (ARB) and Service Tech, Inc. (Service Tech), appeal from a Superior Court order granting preliminary injunctive relief to the plaintiff, Mario Gianfrancesco, which prevented the defendants from trespassing on the plaintiff's property.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the order of the Superior Court.

**I**

**Facts and Procedural History**

The plaintiff and defendants in this action are business owners with abutting properties located on Douglas Avenue in North Providence.  The plaintiff owns the Geneva Diner, located at 1162 Douglas Avenue; he has owned this diner since 1992 or 1993, before which time it was owned by his father, beginning in 1983.  The defendant ARB owns property located at 1164 Douglas Avenue, and defendant Service Tech is ARB's tenant.  Andrew Bilodeau is the sole

- 1 -

shareholder of both ARB and Service Tech. ARB has owned the property at 1164 Douglas Avenue since 1998, which is when Service Tech began operating in that location. Service Tech is in the business of manufacturing and servicing water remediation and air filtration equipment. As part of its usual operations, Service Tech requires deliveries of materials that arrive on large tractor-trailer trucks, ranging in length from thirty to fifty-three feet. These trucks are not owned by Service Tech, but are affiliated with independent trucking companies.[1] Bilodeau testified that these deliveries occur at least once a week, or six to eight times per month.[2]

The plaintiff's and defendants' properties are accessible from Douglas Avenue by means of adjacent driveways, or "curb cuts," separated by a small section of sidewalk. These two curb cuts lead to an open parking area, through which runs the unmarked boundary line between the two lots. Since Service Tech began operating at its current location in 1998, large delivery trucks routinely travel on a diagonal path from Douglas Avenue, through plaintiff's driveway, and onto Service Tech's premises. Bilodeau explained that, although plaintiff had never given him permission to use his driveway, Bilodeau allowed the truck drivers to enter Service Tech via plaintiff's property because "[i]t was the only way to get the product into [his] facility." Timothy Rutherford, a Service Tech employee, also testified that the trucks use plaintiff's driveway because "[t]here is just not enough room. They wouldn't be able to make it to the facility otherwise. * * * There is no other way to do it." The diagonal path through plaintiff's driveway to Service Tech's premises, which is traveled regularly by the large delivery trucks, is the disputed property at issue in this case.

---

[1] Service Tech owns its own fleet of smaller trucks, which it also uses frequently.
[2] In contrast, Timothy Rutherford, an employee of Service Tech since 1994, testified that these deliveries occur approximately "a dozen times a month."

The plaintiff testified that, between the years 1999 and 2001, there were a few instances in which trucks caused damage to the diner while making deliveries to Service Tech. After this happened multiple times, plaintiff "aggressively policed" his property in order to prevent the trucks from causing further damage. The plaintiff testified that the trucks continued to pass through plaintiff's property despite his actions, although less frequently. Arthur Cimini, who had been a patron of the diner for approximately thirty years and had done some carpentry work there, testified that, one day when he was leaving the diner, he found that his vehicle was blocked in by a truck; after requesting that the truck be moved, "the people from next door came with a forklift and loaded the truck." However, Bilodeau testified that he had never given permission for any tractor-trailer trucks to park on plaintiff's property. The plaintiff rented the diner to a tenant for three years from 2010 to 2013 and then took repossession of the business in March 2013, at which point he noticed that trucks were passing over his property more frequently.

The plaintiff filed a complaint against defendants in Providence County Superior Court on March 28, 2013. The complaint included a demand to cease and desist and a request to quiet title, as well as claims for tortious interference with business relations and quantum meruit. The plaintiff's prayer for relief included requests for a declaratory judgment that plaintiff was the sole and exclusive owner of his property; and injunctive relief enjoining defendants from trespassing onto, interfering with, obstructing, or blocking plaintiff's business. On April 12, 2013, defendants filed an answer to plaintiff's complaint and asserted counterclaims for adverse possession,[3] easement by prescription, possession by acquiescence, and trespass. The defendants then moved for their own temporary restraining order on May 13, 2013, seeking to enjoin

---

[3] This claim was later withdrawn.

plaintiff from blocking access to the diagonal path through plaintiff's driveway that the delivery trucks had been using to access Service Tech's premises. Five days of hearings were held between May 22, 2013 and June 10, 2013[4] on the parties' cross-motions for preliminary injunctive relief, which included the testimony of eight witnesses and the introduction of forty-one exhibits into evidence.

In addition to testimony regarding defendants' use of plaintiff's driveway, plaintiff revealed that, for approximately the past thirty years, customers of the Geneva Diner had used a parking area directly to the right of the diner, which encroached on the property occupied by Service Tech. When cars were parked in this area, tractor-trailers were unable to access Service Tech. The plaintiff testified that on the morning of May 23, 2013—which was the second day of testimonial hearings in this case—he was inside the diner when he heard a Service Tech employee call to him through a window, requesting that he move a car that was parked on Service Tech's property. The plaintiff called the North Providence police, and the responding officer told plaintiff that he should put up a sign and some traffic cones in order to prevent his customers from parking on Service Tech's property. The plaintiff told the officer that he wanted to install a fence along the boundary line because the Service Tech employee was "harassing [his] customers"; plaintiff said that this harassment would continue as long as his customers were

---

[4] The record submitted to this Court on appeal contains transcripts of five days of hearings. At the start of the first transcribed hearing, on May 22, 2013, however, reference was made to a previous hearing that did not include testimony. The hearing justice also clarified at the outset of the May 22 hearing that, given the time that had passed since the filing of plaintiff's complaint and the nature of the hearing, the hearing justice would treat plaintiff's motion as a motion for a preliminary injunction rather than a motion for a temporary restraining order. Additionally, at the outset of this hearing, the hearing justice noted that he had taken a view of the disputed property.

parking on Service Tech's property.[5]  The plaintiff stated that his "customers [had] been coming to this diner for 30 years," and he "c[ouldn't] stop them from parking" on Service Tech's property.

As requested by the officer, plaintiff installed a temporary barrier along the property line consisting of a plywood sign and cones.  On June 4, 2013, plaintiff testified that no trucks had passed over his property since he had installed the temporary fence.  The next day, however, Bilodeau testified that Service Tech employees had moved the cones out of the way in order for a truck to make a delivery.  Bilodeau also testified that, if plaintiff were allowed to erect a fence along the boundary line, Service Tech "wouldn't be able to get deliveries and without deliveries [it] would be shut[]down for the most part."

The plaintiff testified that he would be irreparably harmed if the trucks were allowed to continue passing through and parking on his property.  He identified some photographs that he had taken, which were introduced as full exhibits during the hearings, showing a large truck parked in front of the Geneva Diner before making a delivery to Service Tech.  The plaintiff explained that the truck, which in his estimation was fifty feet long, "overpower[ed]" his small diner, which was only thirty feet long and ten feet tall.

Seref "Jeff" Kasapoglu, who leased the diner from plaintiff from 2010 to 2013, testified that, approximately "every few days" during this period of time, he had observed trucks passing over the diner property, "interfering * * * a little bit on the diner side just to make turns" because "it has such a narrow entrance."  The plaintiff testified that he had told Kasapoglu to "be aggressive and police the area."  Kasapoglu, however, reported having a cordial relationship with

---

[5] Bilodeau testified that, at some point in 2013 prior to when plaintiff filed his complaint, he became aware that plaintiff was planning to install a fence along the boundary line between the two lots, and he warned plaintiff that if he did install a fence, Bilodeau would have to seek a restraining order.  The plaintiff, however, denied that this conversation took place.

- 5 -

at least one employee of Service Tech; when one of the diner's customers park[ed] on Service Tech's property, this Service Tech employee politely ask[ed] that the vehicle be moved, and there were "[n]o problems."

During the hearings, a video was introduced into evidence, taken on May 31, 2013, which depicted a large tractor-trailer truck pulling in and then backing out of Service Tech's property without using plaintiff's driveway. Due to the perspective of the video, it was unclear whether the truck traversed over a small portion of plaintiff's property while entering Service Tech's premises, although it did not utilize the driveway. However, according to Rutherford, a Service Tech employee who had personally witnessed this truck exiting Service Tech's premises, the video did not depict the driver's great difficulty in maneuvering the truck off Service Tech's property, specifically that it "took three attempts to exit." As to the issue of whether the large trucks had to use plaintiff's property in order to make deliveries to Service Tech, Bilodeau clarified that it would not be a fair statement to say that a fifty-three-foot truck could never enter Service Tech's premises without using plaintiff's property, because "there are some skilled drivers that might be able to do it if they made a hard enough swing * * * ." He conceded that it did not depend on the truck, but rather the skill of the driver.

After the conclusion of the hearings, the hearing justice issued a bench decision granting plaintiff's request for preliminary injunctive relief and denying defendants' request for the same. This decision was reflected in an order entered on June 26, 2013, which also declared that plaintiff had "full and rightful ownership of the property in question" and that plaintiff had "the right to use and control the property in question." The defendants moved on July 19, 2013 to stay and/or modify the order of preliminary injunction. This motion was denied on August 8, 2013, and defendants filed a timely notice of appeal.

## II

### Standard of Review

Although the grant of a preliminary injunction is an interlocutory order, a direct appeal to this Court is permissible pursuant to G.L. 1956 § 9-24-7.[6] "When reviewing a hearing justice's decision to grant a preliminary injunction, this Court applies an abuse of discretion standard of review." New England Stone, LLC v. Conte, 962 A.2d 30, 32 (R.I. 2009). If the party requesting the preliminary injunction has established a prima facie case warranting preliminary injunctive relief, this Court will not find an abuse of discretion. Vasquez v. Sportsman's Inn, Inc., 57 A.3d 313, 318 (R.I. 2012). "Under such a limited scope of review, this Court need not reach nor resolve the underlying substantive issues as it would after the imposition of a permanent injunction." Id. Instead, "our role is limited to determining whether the hearing justice considered and resolved each of the appropriate preliminary injunction factors without abusing his or her discretion." Id. These factors consist of the following:

> "whether the moving party (1) has a reasonable likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown that the issuance of a preliminary injunction will preserve the status quo." Id. (quoting Iggy's Doughboys, Inc. v. Giroux, 729 A.2d 701, 705 (R.I. 1999)).

## III

### Discussion

In his bench decision, the hearing justice first reviewed the factual allegations in the case and then discussed the factors to be considered when deciding a motion for preliminary

---

[6] General Laws 1956 § 9-24-7 provides in pertinent part: "Whenever, upon a hearing in the superior court, an injunction shall be granted or continued, * * * an appeal may be taken from such order or judgment to the supreme court in like manner as from a final judgment, and the appeal shall take precedence in the supreme court."

injunctive relief. He then reviewed the testimony of each witness and referred to a number of exhibits that had been introduced into evidence. Next, he addressed defendants' request for preliminary injunctive relief, which he ultimately denied.

On appeal, defendants present an expansive argument as to why their request for preliminary injunctive relief should have been granted. Specifically, they claim the right to a prescriptive easement over plaintiff's property and assert that they will suffer irreparable harm if plaintiff is permitted to erect a permanent barrier along his property line. This Court, however, has previously held that, "while 'the grant of a preliminary injunction is appealable, * * * the denial of a preliminary injunction is not' * * * ." Ciprian v. Providence School Board, 29 A.3d 1239, 1239 (R.I. 2011) (mem.) (quoting Paramount Office Supply Co. v. D.A. MacIsaac, Inc., 524 A.2d 1099, 1101 n.1 (R.I. 1987)). Instead of a direct appeal, a "petition for common-law certiorari is the proper method by which to seek review of the denial of a preliminary injunction." Id. (quoting Paramount Office Supply Co., 524 A.2d at 1101 n.1). The defendants in this case have not filed a petition for certiorari for the review of the Superior Court's denial of their motion for preliminary injunctive relief. Therefore, we shall not consider or decide whether this request was properly denied.

We shall, however, address the issue of whether the hearing justice erred in granting plaintiff's request for preliminary injunctive relief. The defendants argue that this request should not have been granted because plaintiff failed to establish a prima facie case. With regard to the first prong of the preliminary injunction analysis, defendants argue that the hearing justice failed to make a finding as to whether plaintiff had a reasonable likelihood of success on the merits of his assorted claims. The defendants argue that, although the hearing justice found that plaintiff had "owned the disputed area for thirty (30) years and has rightful ownership to the property,"

this finding was irrelevant to the merits of plaintiff's claims because none of these claims required proof of ownership for a particular period of time.

The defendants further argue that the hearing justice abused his discretion in finding that plaintiff would potentially suffer irreparable harm if relief were not granted. The defendants assert that, if the trucks had been causing irreparable harm to plaintiff's business, he would not have waited fourteen years to bring this lawsuit. Regarding the third prong, defendants assert that the hearing justice abused his discretion in finding that the balance of the equities tips in favor of plaintiff. The defendants argue that plaintiff has failed to show how his business would be harmed by the continued passage of the trucks, while defendants' business would certainly be harmed by the injunction, because it would force Service Tech to receive deliveries on Douglas Avenue, which would result in a "dangerous and hazardous situation." Next, defendants assert that the issuance of the injunction failed to preserve the status quo because defendants had been using the disputed area since 1998.

The plaintiff, for his part, argues that the hearing justice properly found that plaintiff had a likelihood of success on the merits and that his business stood to suffer irreparable harm. Furthermore, plaintiff notes that the video introduced into evidence refuted defendants' proposition that large trucks could not make deliveries to Service Tech without crossing over plaintiff's property. According to plaintiff, the preliminary injunction was necessary to maintain "[t]he status quo of the Geneva Diner's thirty (30) year business."

After reviewing the record of this case, we are of the opinion that the hearing justice did not abuse his discretion in granting plaintiff's motion for preliminary injunctive relief. Regarding the first prong of the preliminary-injunction standard, reasonable likelihood of success on the merits, the hearing justice found that "there has been no evidence that the plaintiff do[es]

not own and [he has] owned for 30 years the entire parcel including the area traveled over from time to time by the defendants." He further found that plaintiff has "full and rightful ownership of that property, and [he has] a right to use and control [his] property." Although the hearing justice's analysis in this regard was not set forth exhaustively in his bench decision, we are satisfied that he appropriately considered the evidence presented and found that plaintiff had a reasonable likelihood of success on his claims for quiet title and declaratory relief.

Specifically, the parties did not disagree on the boundary line between the two properties, and there was no evidence introduced to suggest that plaintiff was not the owner of his entire parcel of property. The only threat to plaintiff's claims with regard to ownership and title was defendants' asserted claim of an easement by prescription, which claim was rejected by the hearing justice. Although we are not presently reviewing the hearing justice's determination as to the denial of defendants' request for preliminary injunctive relief, we have considered the likelihood of their success on the merits of their prescriptive easement claim in the context of determining whether it constitutes a likely threat to plaintiff's success on his own claims, and we are of the opinion that the hearing justice did not err in finding that defendants did not prevail in this regard.

It is well established that "[a] claimant of an easement by prescription 'must show actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years.'" Butterfly Realty v. James Romanella & Sons, Inc., 93 A.3d 1022, 1030 (R.I. 2014) (quoting Drescher v. Johannessen, 45 A.3d 1218, 1227 (R.I. 2012)). Additionally, "[a] plaintiff claiming an easement * * * bears the heavy burden of proving 'each element by a preponderance of clear and convincing evidence.'" Id. (quoting Carpenter v. Hanslin, 900 A.2d 1136, 1146 (R.I. 2006)). As this Court has previously explained, the hostility element of a prescriptive-easement claim is

satisfied "if one goes upon the land openly and uses it adversely to the true owner * * * ." Butterfly Realty v. James Romanella & Sons, Inc., 45 A.3d 584, 589 (R.I. 2012) (quoting Reitsma v. Pascoag Reservoir & Dam, LLC, 774 A.2d 826, 831 (R.I. 2001)). "Similarly, 'a claim of right may be proven through evidence of open, visible acts or declarations, accompanied by use of the property in an objectively observable manner that is inconsistent with the rights of the record owner.'" Drescher, 45 A.3d at 1228 (quoting Tavares v. Beck, 814 A.2d 346, 351 (R.I. 2003)). Additionally, however, we have held that the true owner can "stop the statutory prescriptive period from running" by "affirmatively communicat[ing]" objection to the use. Reitsma, 774 A.2d at 832 (emphasis omitted).

Here, as the hearing justice found, defendants' claim for a prescriptive easement was defeated by the undisputed fact that plaintiff objected to defendants' use of the property shortly after Service Tech began operating in its current location. The plaintiff testified that he "aggressively policed" his property after the trucks caused damage to the diner on multiple occasions between 1999 and 2001. He further explained that he "would get right out there and tell them and stop them and stop trucks and policed it and they knew that." The defendants, for their part, did not present any evidence to refute plaintiff's assertion that he continuously objected to their use of his property. Thus, the hearing justice did not err in finding that defendants lacked a reasonable likelihood of success on the merits of their claim for a prescriptive easement, which constituted the only asserted threat to plaintiff's claims for quiet title and declaratory relief.

Furthermore, we are convinced that the hearing justice did not err in his determinations regarding the remaining prongs of the preliminary injunction analysis. As for irreparable harm, he found that the "large trucks pose a safety concern for anyone entering or exiting th[e] diner,

- 11 -

driving their vehicles on the lot." He noted the large size of the trucks compared to the diner's small parking area, and he found that the process of getting the trucks in and out "is an incredible disruption, economic and safety hazard if it is allowed to continue." In support of this finding, he relied in part on the video that was introduced into evidence, which showed the passage of an exceptionally large truck onto Service Tech's premises. We are further satisfied that he appropriately balanced the equities, finding that the "hardships are much greater on the [Geneva] Diner than [o]n Service Tech or [ARB] * * *." Regarding the status quo, he found that it "would clearly be maintained by permitting [plaintiff] to enjoy the full use of [his] property including the parking area and [his] own curb cut for [his] own customers and for [his] own use."

Although the hearing justice's bench decision setting forth his reasons for granting plaintiff's request for a preliminary injunction was somewhat scant in the analysis of each prong, we are of the opinion that he adequately addressed the issues and did not err in his findings; especially considering his emphasis on plaintiff's likelihood of success on the merits and the potential for the large trucks to cause irreparable harm to plaintiff's business. See School Committee of North Kingstown v. Crouch, 808 A.2d 1074, 1077 (R.I. 2002) (although the hearing justice "did not make extensive findings; nor did he elaborate on the factors he considered in granting a preliminary injunction," he "evidently focused on the [petitioner's] likelihood of success on the merits of its claims as the lynchpin for granting a preliminary injunction," and, "[g]iven the centrality of that issue to th[e] case," he did not err). As we have previously explained, "prospective damage to a business's good will and reputation 'is precisely the type of irreparable injury for which an injunction is appropriate.'" Iggy's Doughboys, Inc., 729 A.2d at 705 (quoting The Fund for Community Progress v. United Way of Southeastern New England, 695 A.2d 517, 523 (R.I. 1997)).

Finally, we shall briefly address the defendants' argument that the hearing justice abused his discretion by ruling on the merits of the case rather than merely on the issue of preliminary injunctive relief.[7] We are convinced that the hearing justice was aware throughout these proceedings that his rulings concerned only the parties' cross-requests for preliminary injunctive relief. Indeed, he stated at the outset of his bench decision that the matter before the court was the parties' competing requests for preliminary injunctive relief, and he reminded the parties during the hearings that he was not considering the underlying merits of their claims. Furthermore, at the conclusion of the hearing justice's bench decision, the plaintiff's counsel inquired as to the time period for the injunction, and the hearing justice responded: "Well, it would be until further order of the Court. I assume there is an underlying lawsuit here. So, the order will stay in effect until the complaint, underlying complaints are heard on their merits." We are satisfied that the hearing justice's rulings in this matter concerned only the parties' requests for preliminary injunctive relief and that, with the issuance of this decision, he shall proceed in adjudicating the merits of the parties' various claims.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the order of the Superior Court. The record of this case shall be returned to the Superior Court for a trial on the merits.

---

[7] Specifically, defendants point to the language in the order of the Superior Court, which stated that plaintiff had "full and rightful ownership of the property in question," and that plaintiff had "the right to use and control the property in question."



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Mario Gianfrancesco v. A.R. Bilodeau, Inc. et al.

**CASE NO:** No. 2014-12-Appeal.
(PC 13-1458)

**COURT:** Supreme Court

**DATE OPINION FILED:** April 17, 2015

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Daniel A. Procaccini

**ATTORNEYS ON APPEAL:**

For Plaintiff: Merill J. Friedemann, Esq.

For Defendants: Kelly A. Carden, Esq.