April 18, 2023

Finnimore & Fisher Inc. d/b/a Island   :
    Moped et al.

v.              :

Town of New Shoreham.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Finnimore & Fisher Inc. d/b/a Island   :
Moped et al.

              v.           :

Town of New Shoreham.[1]     :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** The defendant, the Town of New Shoreham (the town), appeals from the Superior Court's entry of a preliminary injunction enjoining enforcement of certain amendments to the New Shoreham General Ordinance, chapter 8, article IV, entitled Motorized Cycle Rental. The plaintiffs are New Shoreham businesses that rent mopeds: Finnimore & Fisher Inc. d/b/a Island Moped; Miles-Un-Ltd., Inc.; Aldo's Mopeds, Inc.; The Moped Man, Inc.; and Ocean State Bikes, Inc.[2] Before this Court, the town argues that the hearing justice erred in her analysis and ultimate decision to grant in part the motion for

---

[1] The named defendant in this case is the Town of New Shoreham through the members of the Town of New Shoreham Town Council, in their official capacities.
[2] A moped is a "motor scooter." The American Heritage Dictionary of the English Language 1144 (5th ed. 2011).

preliminary injunction brought by the plaintiffs. For the reasons set forth herein, we affirm the order of the Superior Court.

## I

### Facts and Travel

We derive the underlying facts of this case from the submissions of the parties and the transcripts. We relate only the facts relevant to this appeal.

On March 4, 2021, the town approved amendments to the New Shoreham General Ordinances, chapter 8, article IV, entitled Motorized Cycle Rental (the ordinance). The amendments affected three sections of the ordinance; at issue on appeal are §§ 8-88 and 8-90. A second amendment was additionally made to § 8-90 on May 19, 2021.

Specifically, the amendment to § 8-88, entitled "Hours of operation," made two changes. First, the hours during which mopeds may be rented changed from 9:00 a.m. - 6:00 p.m. to 10:00 a.m. - 6:00 p.m. Second, the operational hours of mopeds changed from 9:00 a.m. - 8:00 p.m. to 10:00 a.m. - 6:00 p.m.

There were two amendments made to § 8-90, entitled "Safety," the latter of which altered changes made in the former version of § 8-90. Those amendments, acting together, ultimately modified the role of licensees—those businesses licensed to rent mopeds and other motorized cycles. These amendments added language (1) requiring licensees to instruct renters that no passenger shall ride in front of the

driver; (2) requiring licensees to "ensure" that all passengers be "provided with a separate rear seat, a separate foot-rest, and an appropriate handlebar or grip" and that all passengers wear a helmet and can rest his or her feet on a foot rest; (3) requiring licensees to "insure [*sic*]" that any passenger under twelve years old "has a properly secured back-rest or equivalent, shall have his or her feet placed upon the foot-rest, and shall be seated behind the operator unless a side car is provided"; (4) requiring the licensees to instruct a renter about proper operation, as well as show renters a training video, issue them a questionnaire, and administer to them a supervised driving test; and (5) precluding the licensee from renting to an individual who is visibly intoxicated. Language was also added to § 8-90(A), which stated: "In addition, violations of this ordinance as well as any other [t]own ordinance or state law or regulation, may result in suspension, revocation, and/or non-renewal of a licensee's license."

On the same day that the town approved the initial amendments, it also granted plaintiffs their licenses for the 2021 season. The plaintiffs thereafter filed a complaint against the town in Washington County Superior Court on March 17, 2021, which requested declaratory and injunctive relief and alleged denial of state and federal procedural and substantive due process, denial of state and federal equal protection, and abuse of process. In their complaint, plaintiffs submitted that the town had attempted to amend its ordinance regarding mopeds "in an impermissible

- 3 -

manner[,]" in contravention of a settlement agreement reached between the parties and in contravention of G.L. 1956 § 31-19.3-5.  The complaint was subsequently amended on May 24, 2021.[3]

On March 26, 2021, plaintiffs moved for a temporary restraining order and preliminary injunction, to which the town objected.  The hearing justice heard arguments on the request for a temporary restraining order; and, on April 23, 2021, an order entered granting the motion and scheduling a hearing on the prayer for preliminary injunctive relief.

Hearings on the preliminary injunction were held on various dates in May and June 2021.  At the hearings, the parties presented evidence and the testimony of several witnesses.  The parties additionally submitted memoranda on their respective positions.

On June 23, 2021, the hearing justice filed her written decision.  She began her analysis by addressing plaintiffs' constitutional claims, indicating that she need not reach those claims because the motion could be decided on other grounds.

The hearing justice then reviewed § 31-19.3-5 of what she called the "New Shoreham Moped Statute[,]" which states:

> "(a) The town council of the town of New Shoreham may enact reasonable ordinances establishing procedures and

---

[3] The amended complaint incorporated a reference to the second amendment to the ordinance and further procedural history that occurred since the filing of the original complaint.  It contained the same counts as the original complaint.

- 4 -

standards for the licensing, supervision, regulation, and control of the rental of motorized bicycles, motor scooters and motorized tricycles.

"(b) An ordinance enacted pursuant to this section may:

"(1) Establish a fee to be charged for the issuance or renewal of any license for the rental of motorized bicycles, motor scooters and/or motorized tricycles the holder of the license is authorized to rent or lease and shall not exceed the sum of forty dollars ($40.00) per motorized bicycle, motor scooters or motorized tricycle.

"(2) Establish a maximum number of licenses which may be granted for the rental of motorized bicycles, motor scooters and/or motorized tricycles.

"(3) Establish hours during which motorized bicycles, motor scooters and/or motorized tricycles may be rented.

"(4) Establish a maximum number of motorized bicycles, motor scooters and/or motorized tricycles which a license holder may rent or lease under the license.

"(5) Provide that no motorized bicycle, motor scooters or motorized tricycle shall be rented or leased in the town of New Shoreham unless the operator thereof has a valid license issued under the provisions of § 31-10-1, or a similar license issued by a state other than Rhode Island.

"(6) Require all motorized bicycles, motor scooters and/or motorized tricycles to pass inspection annually and be issued a certificate by a duly authorized state inspection facility indicating that the vehicle has passed inspection to be conducted at inspection agencies which shall be created and

governed by rules and regulations promulgated by the department of revenue."

The hearing justice observed that subsection (a) of the statute contained a broad provision allowing the town "to 'enact reasonable ordinances' that establish 'procedures and standards for licensing, supervision, regulation, and control of the rental of'" mopeds, while subsection (b) of the statute "enumerates what an ordinance pursuant thereto may require." *See* § 31-19.3-5. Applying rules of statutory construction and distinguishing relevant caselaw, she found that, in this instance, the enumerated list in subsection (b) restricts the subject matter for which the town can enact moped-related ordinances. Thus, she determined that, "if an ordinance falls outside one of the enumerated categories," then it is not reasonable and, consequently, if the ordinance fell "into one of the six enumerated categories, it must be reasonable." She then addressed the amendments individually.

In reviewing the amendment to § 8-88, the hearing justice found that, while § 31-19.3-5(b)(3) allows the town "to enact an ordinance that establishes rental hours for the mopeds," plaintiffs had established a prima facie case that the amendment was unreasonable. In particular, she found that the amendment is "not fair and appropriate because the record is [de]void of any evidence demonstrating that this one-hour reduction will address safety and traffic concerns[,]" highlighting that only three accidents in a six-year period took place between 9:00 a.m. and 10:00 a.m. She further determined that it was "patently unreasonable for the [t]own to

place liability onto the moped owners for a violation of the operational hours" and for a renter's "noncompliance[.]" She ultimately concluded that plaintiffs had proven on a prima facie basis that they had a "reasonable likelihood of success on the merits that the [t]own did not have the authority to enact an ordinance reducing the rental and operational hours because that section of the" ordinance was "not fair and appropriate given the circumstances."

The hearing justice additionally found that the amendments to § 8-90 did not stem from "the specifically enumerated powers set forth in § 31-19.3-5(b)." She determined that the amendments to this section were unreasonable, observing that the "possible loss of the license to rent mopeds" for a violation of this provision was "unfair, inappropriate, and unreasonable under the circumstances." She therefore concluded that plaintiffs had established a prima facie case for success on the merits of their claims under this provision.

Having determined that plaintiffs established, on a prima facie basis, a reasonable likelihood of success on the merits for their claims regarding the amendments to §§ 8-88 and 8-90, the hearing justice then addressed whether plaintiffs would suffer irreparable harm by the passage of those amendments. She found that plaintiffs had demonstrated irreparable harm because they could "lose their licenses as well as the reputation of their businesses if they are not granted a temporary injunction[,]" noting that this Court has "previously explained,

prospective damage to a business's good will and reputation is precisely the type of irreparable injury for which an injunction is appropriate." (Quoting *Gianfrancesco v. A.R. Bilodeau, Inc.*, 112 A.3d 703, 711 (R.I. 2015).)

The hearing justice next addressed whether the balance of the equities was in plaintiffs' favor. She stated that enjoining the amendments would still allow the town "to regulate mopeds in a reasonable manner, as the previously enacted [o]rdinance would remain in place[,]" but that a denial of injunctive relief would mean plaintiffs could "stand to suffer from losing their licenses, and potentially their livelihoods * * *." She additionally found that granting the injunction would "not negatively affect the public interest," given that the town had not demonstrated how the amendments would improve road safety. Finally, the hearing justice found that the injunction would preserve the status quo because the town's original ordinance would remain in place.

The hearing justice ultimately granted plaintiffs' motion to enjoin preliminarily enforcement of amendments to §§ 8-88 and 8-90 and denied the motion to enjoin preliminarily enforcement of the amendment to a third section that is not before us on appeal.[4] An order to that effect entered on July 14, 2021. The town filed a timely notice of appeal on July 16, 2021.

---

[4] The third section, which amends paragraph five of § 8-78 entitled "Same-Application[,]" adds language requiring applicants (1) to submit "a site plan" with specified information included and that identifies "where the applicant proposes

- 8 -

## II

## Standard of Review

Direct appeal of a preliminary injunction is permissible pursuant to G.L. 1956 § 9-24-7. Section 9-24-7 ("Whenever, upon a hearing in the [S]uperior [C]ourt, an injunction shall be granted * * * an appeal may be taken from such order or judgment to the [S]upreme [C]ourt in like manner as from a final judgment * * *."). "When reviewing a hearing justice's decision to grant a preliminary injunction, this Court applies an abuse of discretion standard of review." *Gianfrancesco*, 112 A.3d at 708 (quoting *New England Stone, LLC v. Conte*, 962 A.2d 30, 32 (R.I. 2009)). "If the party requesting the preliminary injunction has established a prima facie case warranting preliminary injunctive relief, this Court will not find an abuse of discretion." *Id.* "Under such a limited scope of review, this Court need not reach nor resolve the underlying substantive issues as it would after the imposition of a permanent injunction." *Id.* (quoting *Vasquez v. Sportsman's Inn, Inc.*, 57 A.3d 313, 318 (R.I. 2012)).

"Instead, 'our role is limited to determining whether the hearing justice considered and resolved each of the appropriate preliminary injunction factors

---

to operate a vehicle proficiency area where renters practice using the vehicle before going onto state or Town roads" and (2) to submit a "plan for the off-season storage of vehicles * * *."

without abusing his or her discretion.'" *Gianfrancesco*, 112 A.3d at 708 (quoting *Vasquez*, 57 A.3d at 318). These factors consist of the following:

> "whether the moving party (1) has a reasonable likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown that the issuance of a preliminary injunction will preserve the status quo." *Id.* (quoting *Vasquez*, 57 A.3d at 318).

Additionally, this Court reviews questions of statutory interpretation *de novo*. *See, e.g.*, *Butler v. Gavek*, 245 A.3d 750, 754 (R.I. 2021). "In so doing, our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Id.* (quoting *Mello v. Killeavy*, 205 A.3d 454, 459 (R.I. 2019)).

## III

## Discussion

On appeal, the town specifies three errors by the hearing justice. First, the town alleges that the hearing justice construed the enabling legislation too narrowly, resulting in her improperly limiting the authority of the town to enact ordinances in the interest of public health, safety, and welfare. Second, the town contends that the hearing justice erred in substituting her judgment for the town's as to the meaning of the word "reasonable." Third, the town argues that the hearing justice erred in determining that plaintiffs would suffer irreparable harm if enforcement of the amendments in question were not enjoined.

- 10 -

**Statutory Interpretation**

We begin by addressing the town's contention that the hearing justice misconstrued the enabling legislation and improperly limited the authority of the town. Specifically, the town takes issue with her determination that "the [t]own is limited to enacting ordinances within the six prescribed areas enumerated in" § 31-19.3-5(b), and it asks this Court to consider the enabling legislation as a whole. The town submits that the list enumerated in § 31-19.3-5(b) is not restrictive; rather, it includes "examples of the reasonable ordinances establishing procedures and standards for supervision, regulation and control of rental mopeds authorized by" § 31-19.3-5(a). In response, plaintiffs contend that the hearing justice properly interpreted the enabling legislation.

This Court interprets "ordinances and statutes in the same manner." *City of Woonsocket v. RISE Prep Mayoral Academy*, 251 A.3d 495, 500 (R.I. 2021). "If the language of a statute or ordinance is clear and unambiguous, it is given 'its plain and ordinary meaning.'" *Id.* (quoting *Sauro v. Lombardi*, 178 A.3d 297, 304 (R.I. 2018)).

In analyzing the statute, the hearing justice applied this Court's rules of statutory construction regarding specific and general provisions, observing that subsection (a) of § 31-19.3-5 contained a broad provision allowing the town "to 'enact reasonable ordinances' that establish 'procedures and standards for licensing, supervision, regulation, and control of the rental of'" mopeds, while subsection (b)

- 11 -

of the statute "enumerates what an ordinance pursuant thereto may require." *See* § 31-19.3-5. She therefore determined that the enumerated list in subsection (b), as the specific provision, restricts the areas in which the town can enact moped-related ordinances. We agree.

This Court has said, and the hearing justice correctly articulated, that "it is a 'general rule of statutory construction that when a statute of general application conflicts with a statute that specifically deals with a special subject matter, and when the two statutes cannot be construed harmoniously together, the special statute prevails over the statute of general application.'" *RISE Prep Mayoral Academy*, 251 A.3d at 501 (deletion omitted) (quoting *Whitehouse v. Moran*, 808 A.2d 626, 629-30 (R.I. 2002)). "Moreover, it is an accepted rule of statutory construction that 'an express enumeration of items in a statute indicates a legislative intent to exclude all items not listed.'" *Terrano v. State Department of Corrections*, 573 A.2d 1181, 1183 (R.I. 1990) (quoting *Murphy v. Murphy*, 471 A.2d 619, 622 (R.I. 1984)).

While § 31-19.3-5(a) indicates that the town council may enact reasonable ordinances "establishing procedures and standards for the licensing, supervision, regulation, and control of the rental of" mopeds, § 31-19.3-5(b) enumerates specifically what ordinances may be enacted, stating that "an ordinance enacted pursuant to this section *may* * * *." (Emphasis added.)

- 12 -

This Court has previously "availed [itself] of the rule of construction that states that an express enumeration of items in a statute indicates a legislative intent to exclude all items not listed." *Murphy*, 471 A.2d at 622; *see* 2A Norman Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction* § 47:23 (7th ed. Nov. 2022 Update) ("In practice * * * all versions of the *expressio unius* rule reflect the same common-sense premise that when people say one thing, they do not mean something else."). Here, the Legislature quite clearly and succinctly listed the types of ordinances that the town may enact in § 31-19.3-5(b), in accordance with its goal of "establishing procedures and standards for the supervision and regulation of" mopeds. Section 31-19.3-1.

Furthermore, in other situations this Court has concluded that the Legislature intended such a list to be non-exhaustive where it is preceded by the phrase "including, without limitation * * *." *See Narragansett Indian Tribe v. State*, 110 A.3d 1160, 1165 (R.I. 2015) ("That the Casino Act lists specific aspects over which the state has authority does not limit the broad grant of power because it is clear that by employing the language '*including, without limitation,*' the specific enumerations are not intended to be the exclusive aspects over which the state has control.") (emphasis added) (quoting G.L. 1956 § 42-61.2-2.1(c)); *cf. In re Tavares*, 885 A.2d 139, 147 (R.I. 2005) (noting that G.L. 1956 § 40.1-5.3-13—which includes language stating that "[t]hese rights include, but are not limited, to the following"—"sets forth

- 13 -

a non-exhaustive list of 'general rights'").  Here, no such language was included. *See Narragansett Indian Tribe*, 110 A.3d at 1165.

We therefore conclude that the hearing justice did not err in determining that the town was "limited to enacting ordinances within the six prescribed areas enumerated in" § 31-19.3-5(b).  We further agree with the hearing justice that the types of ordinances listed in subsection (b) are presumed reasonable, because the General Assembly has already contemplated them.

### Reasonable Likelihood of Success on the Merits

The town additionally submits that the hearing justice erred in determining that the amendments were unreasonable and that plaintiffs had established a reasonable likelihood of success on the merits.  The town argues that the hearing justice should have engaged in a constitutional analysis to determine the reasonableness of the ordinances; however, the town correctly points out that plaintiffs *did not* challenge the constitutionality of the ordinances, for purposes of the preliminary injunction.

This Court has a "deeply rooted commitment not to pass on questions of constitutionality unless adjudication of the constitutional issue is necessary." *State v. Lead Industries Association, Inc.*, 898 A.2d 1234, 1238 (R.I. 2006) (quoting *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 11 (2004)).  Additionally, we have directed that a hearing justice should not reach "a perceived constitutional

- 14 -

ground that was not raised or argued by the parties[,]" and instructed that "[n]either this Court nor the Superior Court should decide constitutional issues unless it is absolutely necessary to do so." *In re Brown*, 903 A.2d 147, 151 (R.I. 2006) (citing *Lead Industries Association, Inc.*, 898 A.2d at 1238). The plaintiffs did not challenge the constitutionality of the amendments for purposes of the preliminary injunction, but rather they challenged the "threshold issue" of "whether or not the [t]own has the power to enact and enforce" the amendments under § 31-19.3-5. Accordingly, the hearing justice acted properly in declining to pass upon this issue.

Furthermore, after reviewing the record of the case, we are of the opinion that the hearing justice did not err in her determination that plaintiffs had established a reasonable likelihood of success on the merits. As to § 8-88, the hearing justice determined that, although § 31-19.3-5(b) "expressly allows for the [t]own to enact an ordinance that establishes rental hours for the mopeds," plaintiffs "established a prima facie case that the amendment is unreasonable." (Emphasis omitted.) Specifically, she took issue with (1) the lack of evidence in the record demonstrating that a one-hour reduction in rental and operational time will address safety and traffic concerns; (2) the fact that the list in § 31-19.3-5(b) does not address *operational* hours of mopeds; and (3) the placement of liability on plaintiffs for a violation of operational hours. She ultimately found that the town's "hypothesis" regarding a reduction of hours in the morning was unsupported by credible evidence, as was the

town's argument that the reduction of evening hours would assist in lessening problems caused by difficult nighttime conditions.

With regard to § 8-90, the hearing justice correctly noted that none of the amendments therein relate to the powers specifically enumerated in § 31-19.3-5(b). Therefore, she determined that they were *per se* unreasonable. Instead of ending her analysis there, the hearing justice went on to engage in a reasonableness discussion of the amendments, reviewing the evidence before her and making credibility determinations within her discretion. Ultimately, she still found that the amendments were unreasonable because they were not "fair and appropriate * * *."

Indeed, the hearing justice engaged in thorough discussions regarding both amendments, concluding that the evidence before her indicated that both were unreasonable. We are therefore satisfied that her decision was within the bounds of her discretion in "consider[ing] and resolv[ing]" the issue of whether plaintiffs had established a reasonable likelihood of success on the merits. *Gianfrancesco*, 112 A.3d at 708 (quoting *Vasquez*, 57 A.3d at 318).

Accordingly, we conclude that the hearing justice did not err in declining to reach the constitutionality of the amended provisions, and she correctly found that plaintiffs had established a reasonable likelihood of success on the merits.

**Irreparable Harm**

Finally, the town takes issue with the hearing justice's determination that there had been a showing of irreparable harm by plaintiffs. The town contends that the hearing justice erred in finding that plaintiffs could be "cited for behavior that was beyond their control." Specifically, the town alleges that the ordinance requires plaintiffs "to instruct renters concerning the proper location of passengers and to provide helmets[,]" not that plaintiffs "would be in violation * * * if a renter failed to comply with the instruction or failed to wear the helmet that had been provided." The town argues that the amendments do "not seek to impose any responsibility on the rental company * * * once the renter leaves the premises."

"A party seeking injunctive relief must demonstrate that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position." *Nye v. Brousseau*, 992 A.2d 1002, 1010 (R.I. 2010) (quoting *National Lumber & Building Materials Co. v. Langevin*, 798 A.2d 429, 434 (R.I. 2002)). "Irreparable injury must be either presently threatened or imminent; injuries that are prospective only and might never occur cannot form the basis of a permanent injunction." *Hebert v. City of Woonsocket by and through Baldelli-Hunt*, 213 A.3d 1065, 1077 (R.I. 2019) (quoting *Nye*, 992 A.2d at 1010).

In the case at bar, the hearing justice began her analysis by correctly articulating the standard for irreparable harm. She indicated that, if plaintiffs "are cited for violations of the [amendments] for things outside their control, this could ruin their multi-decade businesses' good will and reputation."

This Court has "previously explained," and the hearing justice correctly highlighted, "prospective damage to a business's good will and reputation is precisely the type of irreparable injury for which an injunction is appropriate." *Gianfrancesco*, 112 A.3d at 711 (quoting *Iggy's Doughboys, Inc. v. Giroux*, 729 A.2d 701, 705 (R.I. 1999)). We agree with her determination that the potential loss of a plaintiff's license due to behavior of a customer is an injury that would have no adequate remedy at law for the harm it would have on a plaintiff's "good will and reputation."

Specifically, we are troubled by the amended language of § 8-90(A) that states "violations of this ordinance as well as any other [t]own ordinance or state law or regulation, may result in suspension, revocation, and/or non-renewal of a licensee's license[,]" as applied to those amendment requirements wholly within the customer's control. For example, § 8-90(A) indicates that "[e]ach licensee shall *ensure* * * * that all passengers wear a properly fitting helmet" and, further, "[e]ach licensee shall *insure* [*sic*] that any passenger on a [moped] under twelve (12) years of age * * * shall have his or her feet placed upon the foot-rest, and shall be seated

behind the operator unless a side car is provided." Furthermore, that broad language applies to "any other [t]own ordinance"; presumably, this means that a customer's failure to return a moped by the end of operational hours, as amended in § 8-88, could result in "suspension, revocation, and/or non-renewal of a licensee's license." Accordingly, we hold that the hearing justice did not abuse her discretion in finding that plaintiffs would be irreparably harmed by the enforcement of these amendments.

We therefore uphold the Superior Court order granting in part the plaintiffs' motion for preliminary injunction.

**IV**

**Conclusion**

For the reasons set forth herein, we affirm the order of the Superior Court. The record may be returned to the Superior Court for further proceedings consistent with this opinion.

- 19 -

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Finnimore & Fisher Inc. d/b/a Island Moped et al. v. Town of New Shoreham. |
| **Case Number** | No. 2021-272-Appeal. (WC 21-129) |
| **Date Opinion Filed** | April 18, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiffs: Elizabeth McDonough Noonan, Esq. |
| | For Defendant: Mark T. Reynolds, Esq. |