January 8, 2024

**Supreme Court**

No. 2022-356-Appeal.
(PC 21-7676)

Griggs & Browne Pest Control Co., Inc. :

v. :

Brian Walls. :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Griggs & Browne Pest Control Co., Inc.  :

v.                :

Brian Walls.           :

Present: Suttell, C.J., Goldberg, Robinson, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.** The defendant, Brian Walls (defendant or Mr. Walls), challenges an order of the Superior Court granting a motion for a preliminary injunction in favor of his former employer, the plaintiff, Griggs & Browne Pest Control Co., Inc. (plaintiff or company). Mr. Walls, who is pursuing this appeal as a self-represented litigant, argues that the trial justice erred in enforcing a noncompetition agreement between the parties because, he contends, the plaintiff improperly modified the terms of his employment contract. He also takes issue with his trial counsel's representation below. For the reasons set forth in this opinion, we affirm the order of the Superior Court.

## Facts and Procedural History

This appeal arises out of the breakdown and eventual termination of defendant's employment relationship with plaintiff, a Rhode Island pest-control company. Upon Mr. Walls's hiring as a pest control operator in 2011, the parties entered into a noncompetition agreement as a condition of his employment. Several years later, on November 6, 2020, defendant assented to an updated noncompetition agreement whereby plaintiff agreed to train and qualify Mr. Walls as a licensed exterminator in Rhode Island and acknowledged his access to plaintiff's list of customer accounts; in return, Mr. Walls promised that, in the event he ceased working for plaintiff, he would refrain from soliciting business or performing services with plaintiff's former or current customers for a period of twenty-four months.

In late September of 2021, plaintiff notified defendant of an updated employment policy that required all employees either to receive the COVID-19 vaccination or to terminate their employment relationship with plaintiff. Notwithstanding this mandate, plaintiff offered employees an opportunity to seek an exemption on medical or religious grounds on or before November 1, 2021. After learning of the vaccination policy, Mr. Walls met with his supervisors on September 30, 2021, and expressed opposition to vaccination during a loud conversation during which he used profanities. The parties dispute whether Mr.

Walls resigned at the conclusion of the meeting, but it is undisputed that, after the conversation ended, plaintiff informed Mr. Walls that it would hold his position open until October 4, 2021. However, plaintiff subsequently informed Mr. Walls that, based on the way he conducted himself in reaction to plaintiff's vaccination policy, he could no longer resume his employment.

Approximately one month later, plaintiff discovered Mr. Walls's successful attempt to contact plaintiff's former clients and perform pest-control services for them, in violation of his noncompetition agreement. Significantly, plaintiff discovered that Mr. Walls had sent one of plaintiff's former clients a text message on October 15, 2021, stating that he was now the sole proprietor of a "low[-]key cash only business" that would exist until the expiration of his noncompetition agreement with plaintiff, and that he would happily resume his pest-control services for plaintiff's client. Mr. Walls further added that he would become his own boss in twenty-four months.

On November 11, 2021, plaintiff sent Mr. Walls a cease-and-desist letter directing him to refrain from acting in contravention of their noncompetition agreement. Mr. Walls denied any violation of their agreement and plaintiff subsequently filed a seven-count verified complaint that, among other claims for

relief, sought to prevent Mr. Walls from violating the noncompetition agreement.[1] In response, Mr. Walls filed a counterclaim alleging that plaintiff improperly terminated him in breach of his employment agreement due to his refusal to receive the COVID-19 vaccination.[2]

On November 9, 2022, following a hearing, the trial justice granted plaintiff's request for a preliminary injunction to prevent Mr. Walls from violating the noncompetition agreement.[3] In issuing an oral decision from the bench, the trial justice noted that the parties disagreed about whether plaintiff terminated Mr. Walls or whether he resigned voluntarily, but she nevertheless found that neither party disputed that Mr. Walls continued to provide services for plaintiff's clients after their employment relationship ended.

---

[1] The plaintiff alleged: (1) breach of contract resulting from Mr. Walls's violation of the noncompetition agreement; (2) a violation of common law unfair competition; (3) misappropriation of trade secrets and confidential business information in violation of the noncompetition agreement and G.L. 1956 chapter 41 of title 6; (4) conversion of plaintiff's proprietary information and trade secrets; (5) tortious interference with plaintiff's contractual relationships; (6) tortious interference with plaintiff's prospective business relationships; and (7) unjust enrichment.

[2] Mr. Walls's five-count counterclaim alleged: (1) breach of Mr. Walls's employment contract with plaintiff; (2) breach of the duty of good faith and fair dealing; (3) violations of G.L. 1956 chapter 50 of title 28, the Rhode Island Whistleblowers' Protection Act; and (4) separate claims for intentional and negligent infliction of emotional distress.

[3] Rather than presenting testimony, the parties agreed to rely solely on their affidavits and legal memoranda.

Ultimately, the trial justice determined that Mr. Walls entered into a valid, enforceable noncompetition agreement and concluded that plaintiff sufficiently demonstrated a likelihood of success on its claim that Mr. Walls breached that agreement. Specifically, the trial justice determined that the noncompetition agreement existed ancillary to an otherwise valid business relationship, based on its inclusion in Mr. Walls's employment contract, and that Mr. Walls's continued employment constituted adequate consideration. Further, the trial justice concluded that plaintiff had a legitimate interest in enforcing the agreement based on its desire to maintain the goodwill of its customers and to protect its confidential client information. Finally, the trial justice determined that the agreement reasonably prohibited Mr. Walls's post-employment behavior.

The trial justice also addressed Mr. Walls's counterclaims and their impact on plaintiff's likelihood of success. Specifically, the trial justice rejected Mr. Walls's contention that plaintiff breached the employment contract by failing to provide him with adequate training and education, and instead found that plaintiff had in fact done so. The trial justice also rejected Mr. Walls's allegation that plaintiff violated the Rhode Island Whistleblowers' Protection Act and noted his failure to demonstrate that plaintiff terminated him as a result of his reporting any illegal conduct. The trial justice further rejected Mr. Walls's claim that plaintiff wrongfully terminated him based on his religious beliefs, in contravention of the Rhode Island

Civil Rights Act, and noted that plaintiff sufficiently demonstrated that Mr. Walls's termination took place for nondiscriminatory reasons. Finally, the trial justice rejected Mr. Walls's claim for breach of the implied covenant of good faith and fair dealing, noting that there is no such independent cause of action in Rhode Island.

After concluding that plaintiff successfully demonstrated its likelihood of success, she then found that plaintiff sufficiently demonstrated that it had suffered irreparable harm based on its continued loss of customer goodwill. The trial justice also found that the equities balanced in plaintiff's favor while noting that plaintiff's loss of customer goodwill outweighed Mr. Walls's desire to conduct business with plaintiff's current and former clients. Finally, the trial justice concluded that a preliminary injunction would preserve the status quo by preventing Mr. Walls from continuing to violate the noncompetition agreement.

On November 30, 2022, the Superior Court entered an order enjoining Mr. Walls from performing any pest-control services for plaintiff's prior or current customers for a period of twenty-four months; using, divulging, or conveying plaintiff's proprietary and confidential business knowledge; and soliciting plaintiff's prior or current customers for a period of twenty-four months. Mr. Walls thereafter entered his appearance *pro se* and filed a timely notice of appeal.

We consider whether the trial justice erred in determining that plaintiff demonstrated a likelihood of success on the merits of its claim that Mr. Walls

breached a valid, enforceable noncompetition agreement or otherwise improperly granted plaintiff's request for a preliminary injunction.

**Analysis**

This Court reviews a trial justice's decision to grant a preliminary injunction for an abuse of discretion. *Gianfrancesco v. A.R. Bilodeau, Inc.*, 112 A.3d 703, 708 (R.I. 2015). Before the trial justice, a party need only establish a prima facie case demonstrating entitlement to injunctive relief; therefore, we confine our task to reviewing whether the trial justice considered and resolved each of the four factors and will affirm the trial justice's decision so long as the trial justice's actions do not constitute an abuse of discretion. *Finnimore & Fisher Inc. v. Town of New Shoreham*, 291 A.3d 977, 983 (R.I. 2023).

Before granting a preliminary injunction, a trial justice must consider whether the party seeking an injunction: (1) has a reasonable likelihood of success on the underlying merits of its claim; (2) will suffer irreparable harm if the court refuses to grant the injunctive relief; (3) has the balance of equities, which includes an analysis of the possible hardships to each party and the public interest; and (4) has demonstrated that a preliminary injunction will preserve the status quo. *Gianfrancesco*, 112 A.3d at 708.

In pursuing this appeal, Mr. Walls asks this Court to review the decision of the trial justice and challenges the enforceability of "a covenant agreement." We

- 7 -

therefore begin our analysis with a focus on the trial justice's finding that plaintiff has a reasonable likelihood of success on the merits of its breach-of-contract claim.

Our review of the record reveals nothing to suggest that the trial justice abused her discretion in determining that Mr. Walls entered into a valid, enforceable agreement, the relevant language of which provides:

> "NOW, THEREFORE, in consideration of the employment by the Company and the compensation now or hereafter to be paid to Brian Walls by the Company, and in recognition of the agreed facts previously stated, both Brian Walls and the Company agree to the following terms and conditions:
>
> "1. That Brian Walls shall not divulge the names and addresses of any of the customers of the Company to any person, firm or Corporation.
>
> "2. That Brian Walls shall not do, suffer or consent to do, any act or thing prejudicial or injurious to the business or goodwill of the Company.
>
> "3. Brian Walls agrees that he or she will not, directly or indirectly, solicit or be solicited by any past or present Company customer (to include pest control, termite control, renewal customers,) or anyone affiliated with a Company customer.
>
> "4. In addition, Brian Walls agrees that he or she will not perform any pest control or allied services to any past or present Company customers. This agreement and restriction will be in effect for twenty-four (24) months from the date of termination.
>
> "5. During the term of employment and for twenty-four (24) months thereafter Brian Walls agrees that he or she will not divulge to others any information he may possess

pertaining to the company's business during such period[.] Brian Walls agrees upon termination of employment to return to the company all equipment, samples, technical bulletins, price lists, list of customers, prospects and their inquiries, and any other property belonging to the company in relation to its business.

"I understand that upon my termination from employment of [*sic*] the Company, I will not be able to solicit or be solicited, nor perform any pest control or allied services, to any past or present Company customer for a period of twenty-four (24) months and I agree to adhere to all the clauses outlined in this document."

Generally, this Court disfavors the enforcement of covenants not to compete and subjects these contractual provisions to rigorous judicial scrutiny. *Cranston Print Works Co. v. Pothier*, 848 A.2d 213, 219 (R.I. 2004). As a result, we will refuse to enforce covenants not to compete unless the litigant seeking their enforcement demonstrates that the contractual provision is ancillary to an otherwise valid transaction or employment relationship, that the contract is reasonable, and that it does not extend beyond what is apparently necessary to protect the party receiving the provision's benefit. *Id.* Additionally, litigants seeking enforcement of noncompetition clauses that lack both a temporal and a geographic limitation will succeed only to the extent that such clauses are necessary to safeguard the promisee's—usually the employer's—legitimate interests. *Id.* at 220.

Based on our examination of the record, we are satisfied that plaintiff met its burden and demonstrated a likelihood of success on the merits of its claim that Mr.

Walls breached a valid, enforceable contract. The noncompetition agreement at issue is a product of a lawful, bargained-for exchange based on Mr. Walls's at-will employment relationship with plaintiff: In consideration for continued employment with plaintiff, as well as plaintiff's promise to train and qualify Mr. Walls as a licensed exterminator in Rhode Island, Mr. Walls agreed not to solicit business from, or perform pest-control services for, any of plaintiff's current or former clients for a period of twenty-four months. It is undisputed that Mr. Walls signed the noncompetition agreement at issue on November 6, 2020, and that he subsequently breached the noncompetition agreement by communicating with, and performing work for, clients affiliated with plaintiff.[4]

Moreover, the noncompetition agreement at issue withstands our rigorous scrutiny: It is reasonable in scope and does not extend beyond what it necessary to protect plaintiff's interests. Specifically, it limits its prohibition to a twenty-four-month period, and extends only to plaintiff's current and previous clients, rather than to a geographic area. This Court has previously upheld similar, more restrictive noncompetition agreements and takes no issue with the language contained in this agreement. *See Griggs and Browne Co., Inc. v. Healy*, 453 A.2d 761, 762 (R.I. 1982)

---

[4] During oral argument before this Court, Mr. Walls attempted to persuade us that he reached out to plaintiff's clients in an effort to gauge their interest in hiring him to perform non-pest-control services, such as lawn maintenance. However, his belated argument is unpersuasive.

- 10 -

(affirming the Superior Court's issuance of a preliminary injunction that prevented a former employee from working within a seventy-five-mile radius of the employer's headquarters for a period of three years). Therefore, based on the permissible and reasonable nature of the noncompetition agreement, and Mr. Walls's concession that his actions constituted a breach of its terms, we are satisfied that the trial justice appropriately found that plaintiff successfully demonstrated a likelihood of success on the merits of its breach-of-contract claim.

Mr. Walls nevertheless urges this Court to conclude that plaintiff breached its employment agreement with him and that he was therefore relieved of his obligations under the noncompetition agreement. In support of this argument, Mr. Walls contends that plaintiff improperly terminated his employment based on his vocal opposition to receiving the COVID-19 vaccination. Relatedly, Mr. Walls objects to his trial counsel's defense strategy based on her decision to submit evidence supporting the idea that Mr. Walls resigned from his role at plaintiff's company. Lastly, Mr. Walls asserts that plaintiff did not allow him to apply for a religious exemption and that his alleged termination violated his "religious civil rights." We address each argument in turn.

Mr. Walls insists that plaintiff terminated him from his position, while plaintiff maintains that Mr. Walls departed of his own volition; however, the circumstances surrounding Mr. Walls's exit from the company are immaterial to the

- 11 -

enforcement of the noncompetition agreement.  The plain language of the noncompetition agreement prohibits Mr. Walls from violating its terms upon his "termination from employment."  There is no limiting language that conditions applicability on the circumstances of the termination from employment, whether voluntary or involuntary.[5]  As an "at-will" employee, plaintiff had the ability to terminate him at any time and for any lawful reason.[6]  We therefore reject Mr. Walls's argument that an involuntary termination would preclude enforcement of the noncompetition agreement.  Consequently, any objection that Mr. Walls may have concerning his trial counsel's defense strategy, which acknowledged defendant's resignation from the company, is of no moment.

Finally, Mr. Walls argues that plaintiff unlawfully terminated him based on the religious nature of his opposition to the receipt of the COVID-19 vaccination.  However, this argument is enormously undercut by the fact that Mr. Walls had an initial opportunity to apply for a religious exemption to this policy, declined to take it in the first instance, and listed several other nonreligious reasons for his opposition

---

[5] Notwithstanding this determination, we acknowledge the attendant Department of Labor and Training (DLT) proceeding and its ultimate conclusion that plaintiff terminated Mr. Walls.  The DLT, however, reached this determination as it related to Mr. Walls's receipt of unemployment benefits pursuant to G.L. 1956 § 28-44-18.  This determination has no bearing on the validity of the noncompetition agreement itself.

[6] Mr. Walls acknowledged his at-will employment status during the DLT's proceeding.

to plaintiff's vaccination policy. In rejecting this argument, we emphasize that the record reveals that other employees applied for, and received, a faith-based exemption to plaintiff's vaccination policy. Therefore, we remain confident that the trial justice supportably found that plaintiff successfully demonstrated a likelihood of success on the merits of its breach-of-contract claim, and we conclude that the trial justice did not abuse her discretion in resolving this element in plaintiff's favor.

Moreover, we are also satisfied that the trial justice considered and resolved the remaining factors demonstrating entitlement to injunctive relief. Specifically, the trial justice supportably found that plaintiff would suffer irreparable harm because Mr. Walls's ongoing interference with its business undoubtedly creates a loss of customer goodwill constituting irreparable harm. *See Pucino v. Uttley*, 785 A.2d 183, 188 (R.I. 2001). Additionally, the record supports the trial justice's finding that the equities tip in plaintiff's favor because plaintiff's ongoing loss of customer goodwill outweighs Mr. Walls's preference to perform pest-control services for plaintiff's clients. Lastly, we perceive no error in the trial justice's finding that preventing Mr. Walls from continuing to service plaintiff's clients would uphold the status quo.

We therefore conclude that the plaintiff sufficiently demonstrated a prima facie case in favor of a preliminary injunction and that the trial justice did not abuse her discretion by granting a motion for a preliminary injunction in the plaintiff's

favor.  Accordingly, we affirm the Superior Court's decision granting the plaintiff's requested injunction.

## Conclusion

Based on the foregoing, we affirm the order of the Superior Court and remand the record in this case.

Justice Lynch Prata did not participate.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Griggs & Browne Pest Control Co., Inc. v. Brian Walls. |
| **Case Number** | No. 2022-356-Appeal.<br>(PC 21-7676) |
| **Date Opinion Filed** | January 8, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Mitchell R. Edwards, Esq. |
| | For Defendant:<br><br>Brian Walls, *pro se* |